Original

Approved: [signature]
SAGAR K. RAVI
Assistant United States Attorney

Before: THE HONORABLE KATHARINE H. PARKER
United States Magistrate Judge
Southern District of New York

**22 MAG 1988**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>RAFAEL MARTINEZ,<br><br>Defendant. | **SEALED COMPLAINT**<br><br>Violations of 15 U.S.C. § 645(a) and 18 §§ 1001, 1014, 1343, 1344, and 1028A<br><br>COUNTY OF OFFENSE: NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

SANDIP SINGH, being duly sworn, deposes and says that he is a Special Agent with the Internal Revenue Service, Criminal Investigation ("IRS-CI"), and charges as follows:

**COUNT ONE**
**(Wire Fraud)**

1. From in or about April 2020 through at least in or about June 2021, in the Southern District of New York and elsewhere, RAFAEL MARTINEZ, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, MARTINEZ used false and fraudulent pretenses, representations, and documents to fraudulently obtain the approval of the United States Small Business Administration (the "SBA") for his company, MBE Capital Partners, LLC ("MBE"), to be a non-bank lender through the Paycheck Protection Program (the "PPP"), and then MARTINEZ used that approval to obtain approximately $932 million in capital to

issue PPP loans and earn over approximately $71 million in lender fees.

(Title 18, United States Code, Sections 1343 and 2.)

**COUNT TWO**
**(Wire Fraud)**

2. From in or about April 2020 through at least in or about May 2020, in the Southern District of New York and elsewhere, RAFAEL MARTINEZ, the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, which affected a financial institution, to wit, MARTINEZ engaged in a scheme to obtain a Government-guaranteed loan for MBE through the PPP by means of false and fraudulent pretenses, representations, and documents submitted to a financial institution.

(Title 18, United States Code, Sections 1343 and 2.)

**COUNT THREE**
**(Bank Fraud)**

3. From in or about April 2020 through at least in or about May 2020, in the Southern District of New York and elsewhere, RAFAEL MARTINEZ, the defendant, willfully and knowingly executed, and attempted to execute, a scheme and artifice to defraud financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC"), and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations and promises, to wit, MARTINEZ engaged in a scheme to obtain a Government-guaranteed loan for MBE through the PPP from an FDIC-insured bank by means of false and fraudulent pretenses, representations, and documents.

(Title 18, United States Code, Sections 1344 and 2.)

**COUNT FOUR**
**(Making False Statements to a Bank)**

4. From in or about April 2020 through at least in or about May 2020, in the Southern District of New York and elsewhere, RAFAEL MARTINEZ, the defendant, knowingly made false statements and reports and willfully overvalued land, property, and security, for the purpose of influencing the actions of financial institutions, the accounts of which were insured by the FDIC, in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, and loan, to wit, MARTINEZ made false statements to an FDIC-insured bank regarding, among other things, the number of employees of MBE and the wages paid to MBE employees, for the purpose of obtaining a Government-guaranteed loan for MBE through the PPP.

(Title 18, United States Code, Sections 1014 and 2.)

**COUNT FIVE**
**(Making False Statements)**

5. From in or about April 2020 through at least in or about June 2021, in the Southern District of New York and elsewhere, RAFAEL MARTINEZ, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation and made and used a false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, to wit, MARTINEZ made false statements to the SBA regarding, among other things, the audited financial statements of MBE, for the purpose of obtaining the approval of the SBA for MBE to be a non-bank lender through the PPP.

(Title 18, United States Code, Sections 1001 and 2.)

**COUNT SIX**
**(Making False Statements to the SBA)**

6. From in or about April 2020 through at least in or about June 2021, in the Southern District of New York and elsewhere, RAFAEL MARTINEZ, the defendant, knowingly and willfully made a false statement for the purpose of obtaining a loan for an applicant, influencing in any way the action of the SBA, and obtaining money, property, or anything of value, under Chapter 14 of Title 15 of the United States Code, to wit,

MARTINEZ made false statements to the SBA regarding, among other things, the audited financial statements of MBE, for the purpose of obtaining the approval of the SBA for MBE to be a non-bank lender through the PPP.

(Title 15, United States Code, Sections 645(a), and Title 18, United States Code, Section 2.)

**COUNT SEVEN**
**(Aggravated Identity Theft)**

7. From in or about April 2020 through at least in or about May 2020, RAFAEL MARTINEZ, the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, MARTINEZ used the name and identity of another person, namely the Tax Preparer defined *infra*, in connection with the submission of a fraudulent loan application and supporting documentation to at least one financial institution during and in relation to the fraud and false statement charges in Counts Two, Three, and Four of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), (b) & (c)(4)-(5), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

8. I am a Special Agent with IRS-CI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, witnesses, and others, as well as my examination of report and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

Overview of the Fraudulent Conduct

9. At all relevant times, RAFAEL MARTINEZ, the defendant, has been the CEO and primary owner of MBE, a New York limited liability company formed in or about March 2015. According to representations made by MARTINEZ, Republic Group, LLC, a/k/a Republic Group Parts, LLC ("Republic Group"), which is owned and controlled by MARTINEZ, serves as the holding company for MBE and conducts business as MBE. According to MBE's website, "For over 20 years, MBE Capital Partners has been a leading provider of financing solutions for small and diverse businesses . . . . In 2019, we financed over $1.7 billion in public and private debt and we funded over 35,000 PPP loans worth $800M."

10. On or about April 5, 2020, RAFAEL MARTINEZ, the defendant, applied to a financial institution for a government-guaranteed loan for Republic Group, d/b/a MBE through the SBA's PPP. In connection with the loan application, MARTINEZ represented that MBE had as many as 15 employees and an average monthly payroll of approximately $119,390 in 2019. In fact, however, from in or about April 2018 through in or about April 2020, MBE had at most four employees who had a total average monthly payroll of no more $25,000. In order to support the false representations made by MARTINEZ in the loan application about the number of employees at and the wages paid by MBE, MARTINEZ submitted fraudulent and doctored tax records that contained the forged signature of a tax preparer located in Manhattan, New York (the "Tax Preparer"). Based on the false documentation provided by MARTINEZ, MBE was approved for a PPP loan in the amount of approximately $283,764, which was disbursed to a bank account controlled by MARTINEZ. A majority of the loan proceeds do not appear to have been used for payroll for employees of MBE or other business expenses.

11. On or about April 9, 2020, within five days of applying for the PPP loan referenced above, RAFAEL MARTINEZ, the defendant, submitted an application to the SBA for MBE to become a non-bank PPP lender. As part of the PPP lender application process, MARTINEZ represented that MBE had originated and serviced over $3.8 billion in business loans or other commercial financial receivables for the three-year period from in or about 2017 through in or about 2019 and submitted fraudulent financial statements that purported to be audited by the Tax Preparer's firm for the years 2018 and 2019. Based on the false information provided by MARTINEZ to the SBA, MBE was approved as a non-bank lender for PPP loans.

12. On or about April 27, 2020, RAFAEL MARTINEZ, the defendant, submitted various documents, including the same fraudulent audited financial statements for 2019 provided to the SBA, to a life insurance company (the "Company") as part of a proposed partnership to fund PPP loans for minority and women-owned small businesses. On or about May 13, 2020, the Company provided MBE with $100 million to fund PPP loans, which MBE in turn used as collateral to borrow additional capital of approximately $832 million through the Payment Protection Program Liquidity Facility ("PPPLF") with the Federal Reserve.

13. As a result of the above fraudulent misrepresentations, RAFAEL MARTINEZ, the defendant, through his company MBE, became an approved PPP lender and issued approximately $823 million in PPP loans to approximately 36,600 businesses. These loans earned MARTINEZ a total of approximately $71.3 million in fees. MARTINEZ spent the proceeds from his criminal conduct on, among other things, the purchase of a villa in the Dominican Republic for over $10 million, a $3.5 mansion located in Franklin Lakes, New Jersey, a chartered jet service, and several luxury vehicles, including a 2018 Porsche 911 Turbo, a 2017 Ferrari 488 Spider, a 2017 Bentley Continental GT, a BMW 750, and a 1962 Mercedes Benz 190.

## Background on SBA Lending in Response to COVID-19

14. The SBA is a federal agency of the Executive Branch that administers assistance to American small businesses. This assistance includes guaranteeing loans that are issued by certain lenders to qualifying small businesses. Under the SBA loan guarantee programs, the actual loan is issued by a commercial lender, but the lender receives the full faith and credit backing of the United States Federal Government on a percentage of the loan. Therefore, if a borrower defaults on an SBA-guaranteed loan, the commercial lender may seek reimbursement from the SBA, up to the percentage of the guarantee. By reducing the risk to commercial lenders, the SBA loan guarantee programs enable lenders to provide loans to qualifying small businesses when financing is otherwise unavailable to them on reasonable terms through normal lending channels. When a borrower seeks an SBA-guaranteed loan, the borrower must meet both the commercial lender's eligibility requirements for the loan as well as the SBA's eligibility requirements.

15. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted on March 29, 2020

designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through the PPP. On April 24, 2020, the Paycheck Protection Program and Health Care Enhancement Act was signed into law, authorizing over $300 billion in additional PPP funding. After additional rounds of funding, the PPP ended on or about May 31, 2021.

16. The PPP allowed qualifying small businesses and other organizations to receive unsecured SBA-guaranteed loans with a maturity of two years and interest rate of one percent. PPP loan proceeds must be used by businesses on payroll costs, mortgage interest, rent, and/or utilities. The PPP allowed the interest and principal to be forgiven if businesses spend the proceeds on these expenses within eight weeks of receipt and use at least 75% of the forgiven amount for payroll. Pursuant to the CARES Act, the amount of PPP funds a business was eligible to receive was determined by the number of employees employed by the business and their average payroll costs. Businesses applying for a PPP loan must provide documentation to confirm that they have in the past paid employees the compensation represented in the loan application. The PPP was overseen by the SBA, which has authority over all PPP loans, but individual PPP loans were issued by approved commercial lenders who received and processed PPP applications and supporting documentation, and then made loans using the lenders' own funds.

17. The SBA authorized non-bank lenders to issue PPP loans. In order to become approved as a non-bank PPP lender, the applicant must attest that, among other things, it has been operating since at least February 15, 2019, has a formal compliance program relating to auditing and compliance with applicable laws, and that it has originated, maintained, and serviced more than $50 million in business loans or other commercial financial receivables during a consecutive 12-month period in the past 36 months. In addition, the applicant must also submit the applicant's most recent fiscal year-end audited financial statements.

18. On April 8, 2020, the Board of Governors of the Federal Reserve System, with the approval of the Secretary of the Treasury, authorized each of the regional Federal Reserve Banks to establish and operate the PPPLF, pursuant to Section 13(3) of the Federal Reserve Act. Under the PPPLF, Reserve

Banks extended non-recourse credit to SBA-approved lenders that were eligible to originate PPP loans, taking the PPP loans as collateral. The purpose of the PPPLF was to bolster the effectiveness of the PPP, provide liquidity to credit markets, help stabilize the financial system, and provide relief to small businesses affected by the COVID-19 crisis.

<u>The Fraudulent PPP Loan Application for MBE</u>

19. Based on my review of records obtained from an FDIC-insured financial institution ("Bank-1") and my conversations with representatives of Bank-1, I have learned the following, in substance and in part, regarding a PPP loan application submitted by RAFAEL MARTINEZ, the defendant:

a. On or about April 5, 2020, MARTINEZ submitted and signed an application to Bank-1 for a PPP loan in the amount of $106,962 for Republic Group d/b/a MBE with a business address at One Penn Plaza in Manhattan, New York. In the application, MARTINEZ certified, in substance and in part, the following:

i. MARTINEZ owns 78% of the business and is not an owner of any other business.

ii. The loan funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments, and that if the funds are knowingly used for unauthorized purposes, the federal government may hold MARTINEZ legally liable, such as for charges of fraud;

iii. Current economic uncertainty makes this loan request necessary to support the ongoing operations of the business;

iv. The information provided in the loan application and in all supporting documents and forms is true and accurate in all material respects; and

v. MARTINEZ understood that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law.

b. On or about April 15, 2020, MARTINEZ submitted and signed a PPP application addendum in which MARTINEZ represented, in substance and in part, that MBE had an average monthly payroll of approximately $119,390 in 2019, which resulted in a PPP loan calculation of approximately $298,476.

c. In order to support the representations regarding the number of employees and average monthly payroll for MBE, MARTINEZ submitted the following documents to Bank-1 on or about April 15, 2020 (collectively, the "Fraudulent 941 Forms"):

i. A purported Internal Revenue Service IRS Form 941 (Employer's Quarterly Federal Tax Return) for MBE for the first quarter of 2019, which appeared to be signed by MARTINEZ and the Tax Preparer on or about April 13, 2019 and reported that MBE had 12 employees who were paid a total of approximately $158,660 during the period.[1]

ii. A purported IRS Form 941 for MBE for the second quarter of 2019, which appeared to be signed by MARTINEZ and the Tax Preparer on or about July 20, 2019 and reported that MBE had 12 employees who were paid a total of approximately $157,139 during the period.

iii. A purported IRS Form 941 for MBE for the third quarter of 2019, which appeared to be signed by MARTINEZ and the Tax Preparer on or about October 18, 2019 and reported that MBE had 11 employees who were paid a total of approximately $160,945 during the period.

iv. A purported IRS Form 941 for MBE for the fourth quarter of 2019, which appeared to be signed by MARTINEZ and the Tax Preparer on or about January 10, 2020 and reported that MBE had 11 employees who were paid a total of approximately $167,735 during the period.

v. A purported IRS Form 941 for MBE for the first quarter of 2020, which appeared to be signed only by MARTINEZ on or about April 6, 2020 and reported that MBE had 15 employees who were paid a total of approximately $159,139 during the period.

d. On or about May 5, 2020, Bank-1 approved a $283,764 PPP loan to Republic Group d/b/a MBE, which was

---

[1] IRS Form 941 is used to report wages a business has paid as well as employment taxes withheld. Form 941 is generally due by the last day of the month following the end of the quarter. For example, a business is required to file Form 941 by April 30 for wages paid during the first quarter, which is January through March.

disbursed to an account at Bank-1 controlled by MARTINEZ and his daughter. A majority of the loan proceeds do not appear to have been used for payroll for employees of MBE or other business expenses.

20. Based on my interview of the Tax Preparer, I have learned the following, in substance an in part:

a. The Tax Preparer is self-employed and the sole owner of a company that provides bookkeeping and tax preparation services located in Manhattan, New York (the "Tax Firm").

b. Since in or about 2015, the Tax Preparer has prepared tax returns for RAFAEL MARTINEZ, the defendant, MBE, and other companies owned by MARTINEZ, based on information provided by MARTINEZ and MBE's accountant.

c. The Tax Preparer typically does not prepare IRS Forms 941 for clients.

d. The Tax Preparer did not prepare, review, authorize, or sign the Fraudulent 941 Forms for 2019 submitted by MARTINEZ to Bank-1, which contained a forged signature for the Tax Preparer.

e. The Fraudulent 941 Forms for 2019 submitted by MARTINEZ to Bank-1 contained an incorrect phone number and address for the Tax Firm and misspelled the name of the Tax Firm.

21. Based on my review of email correspondence with RAFAEL MARTINEZ, the defendant, obtained through a judicially authorized search warrant of MARTINEZ's MBE email account, I have learned the following, in substance in part:

a. On or about April 9, 2020, MARTINEZ received a copy of a sample PPP loan package for a sushi restaurant located in Maryland (the "Restaurant") which contained, among other things, IRS Forms 941 for each quarter of 2019.

b. On or about April 12, 2020, MARTINEZ sent an email to himself with the subject "to do," which listed, among other items, "SBA loan app," "941 and PPP docs for [Bank-1]," and "Proposal for [the majority owner of the Company, discussed *infra*]."

c. Based on my comparison of the figures on the IRS Forms 941 for the Restaurant sent to MARTINEZ on or about April 9, 2020 and the Fraudulent 941 Forms submitted by MARTINEZ to Bank-1 for MBE on or about April 15, 2020, I have determined that both sets of forms report the exact same wage figures for the same quarters of 2019 but different figures as to the number of employees. For example, for the first quarter of 2019, the Fraudulent 941 Form submitted by MARTINEZ to Bank-1 for MBE reported compensation for 12 employees of $158,660.90 with $7,356.00 in federal income tax withheld, while the IRS Form 941 for the Restaurant reported compensation for 24 employees of $158,660.90 with $7,356.00 in federal income tax withheld. Similarly, for the fourth quarter of 2019, the Fraudulent 941 Form submitted by MARTINEZ to Bank-1 for MBE reported compensation for 14 employees of $167,735.26 with $8,257.00 in federal income tax withheld, while the IRS Form 941 for the Restaurant reported compensation for 28 employees of $167,735.26 with $8,257.00 in federal income tax withheld.

d. Based on the above, I believe that MARTINEZ used the same figures reported in the Restaurant's IRS Forms 941 for the Fraudulent 941 Forms for MBE that he submitted to Bank-1, except that he halved the number of employees that were reported in the Fraudulent 941 Forms.

22. Based on my review of records obtained from the New York Department of Labor and the New Jersey Department of Labor and Workforce Development, I have learned that, contrary to the representations made to Bank-1 that MBE had between 11 and 14 employees and a total payroll of $644,480 in 2019 and 15 employees and a total payroll of $159,139 in the first quarter of 2020, MBE only reported a total payroll of approximately $81,200 for no more than four employees in 2019 and no employees or payroll in the first quarter of 2020.

23. Based on my review of records obtained from the SBA, I have learned that on or about September 27, 2021, RAFAEL MARTINEZ, the defendant, submitted a loan forgiveness application to Bank-1 regarding the $283,764 PPP loan to Republic Group d/b/a MBE. In the loan forgiveness application, MARTINEZ represented, in substance and in part, that MBE had 10 employees at the time the initial PPP application was submitted and that at least $142,530, the maximum forgivable loan amount, was spent on payroll costs.

The Fraudulent PPP Lender Application for MBE

24. On or about April 9, 2020, RAFAEL MARTINEZ, the defendant, submitted an application to the SBA to become a non-bank lender to issue PPP loans. In the application, MARTINEZ certified, in substance and in part, the following:

a. MBE is a financing provider that has a formal compliance program relating to auditing and compliance with applicable laws;

b. MBE applies the requirements under the Bank Secrecy Act ("BSA") as an equivalent federally regulated financial institution;

c. MBE originated and serviced business loans of approximately $1.732 billion in connection with 253 loans in 2019, approximately $1.314 billion in connection with 214 loans in 2018, and approximately $801 million in connection with 127 loans in 2017;

d. MARTINEZ has attached MBE's most recent fiscal year-end audited financial statements; and

e. MARTINEZ certified that all representations made "are true and correct to the best of my knowledge" and acknowledged that false statements made to the SBA "can result in criminal prosecution."

25. In connection with the PPP lender application, RAFAEL MARTINEZ, the defendant, submitted "Reviewed Financial Statements for the Year Ended December 31, 2018" for "MBE Capital Partners, Inc., a Division of Republic Companies" (the "2018 Reviewed Financial Statements"). The 2018 Reviewed Financial Statements contained an "Accountant's compilation report" dated February 10, 2019 purporting to be issued by the Tax Firm as "Certified Public Accountants," which stated the following, in substance and in part: "We have audited the accompanying consolidated financial statements and, accordingly, express an opinion of assurance on them." The 2018 Reviewed Financial Statements reported total current assets of approximately $1.314 billion, net income of approximately $7.055 million, and cash at end of year of approximately $1.37 million.

26. On or about April 16, 2020, after the SBA informed RAFAEL MARTINEZ, the defendant, that an applicant is required to provide its most recent audited financial statements and not

"reviewed" statements, MARTINEZ submitted "Audited Financial Statements for the Year Ended December 31, 2019" for "Republic Group Parts, LLC DBA MBE Capital Partners" (the "2019 Audited Financial Statements"). The 2019 Audited Financial Statements contained an "Accountant's Audit Report" dated April 14, 2020 purporting to be issued by the Tax Firm as "Certified Public Accountants," which stated the following, in substance and in part:

> We have audited the accompanying consolidated annual accounts of [MBE] and its subsidiaries . . . . In our opinion, the accompanying consolidated annual accounts give a true and fair view, in all material respects, of the consolidated equity and consolidated financial performance of [MBE] . . . in accordance with GAAP and other provisions of the financial reporting framework applicable in the US."

The 2019 Audited Financial Statements reported total current assets of approximately $1.731 billion, net income of approximately $7.255 million, and cash at end of year of approximately $1.8 million.

27. On or about April 30, 2020, based on the lender application, purported audited financial statements, and other representations RAFAEL MARTINEZ, the defendant, submitted to the SBA, the SBA determined that MBE had the necessary qualifications to process, close, disburse, and service loans made with the SBA guarantee and approved MBE as a PPP lender.

28. Based on my interview of the Tax Preparer and my review of email correspondence between RAFAEL MARTINEZ, the defendant, and the Tax Preparer, I have learned the following, in substance an in part:

a. The Tax Firm does not and cannot perform audits or compilation reports of financial statements because it does not meet New York State's peer review requirements.

b. The Tax Firm did not prepare, review, or authorize the issuance of the 2018 Reviewed Financial Statements or the 2019 Audited Financial Statements for MBE, which incorrectly spelled the name of the Tax Firm.

c. In or about November 2019, MARTINEZ contacted the Tax Preparer to perform an audit and the Tax Preparer informed MARTINEZ, in substance and in part, that the Tax Firm does not perform audits. Specifically, on or about November 13, 2019, the Tax Preparer sent an email informing MARTINEZ, in substance and in part, that the Tax Preparer does not do audits anymore and referred MARTINEZ to a third-party auditor.

29. Based on my review of the 2019 Audited Financial Statements for MBE provided to the SBA, I have learned that they contain an arithmetical error such that, based on the operating expenses listed, the net income reported should be approximately $1.884 million, not approximately $7.255 million.

30. Based on my review of MBE's filed tax returns for 2018 and 2019 as provided to me by the Tax Preparer, I have learned the following, in substance and in part:

a. The net income of approximately $7.055 million reported in the 2018 Reviewed Financial Statements for MBE provided to the SBA is inconsistent with MBE's filed tax return for 2018, which reported a loss of approximately $78,625.

b. The net income of approximately $7.255 million (or $1.884 million accounting for the arithmetical error described above in paragraph 29) reported in the 2019 Audited Financial Statements for MBE provided to the SBA is inconsistent with MBE's filed tax return for 2019, which reported a loss of approximately $4.5 million.

31. Based on my review of bank and internal financial records for the Republic Group and MBE from in or about 2017 through in or about 2020, I have learned that the financial activity reflected in such records is not consistent with the representations RAFAEL MARTINEZ, the defendant, made to the SBA in the PPP lender application for MBE. For example:

a. A monthly budget sheet for 2018 that was circulated internally at MBE on or about March 8, 2019 to MARTINEZ reflected actual interest income earned of only approximately $75,000 in 2018 and a net loss of approximately $1.305 million in 2018, compared to the representation to the SBA that MBE earned net income of approximately $7.055 million in 2018.

b. Bank records for known MBE accounts reflect that MBE had total incoming and outgoing funds of no more than

approximately $1.8 million in 2018 and $1.1 million in 2019, which is inconsistent with the representation that MBE originated and serviced total business loans of approximately $3 billion in 2018 and 2019.

c. Bank records for known MBE bank accounts reflect that MBE had a total of approximately $43,330 in cash at the end of 2018 and approximately $3,524 in cash at the end of 2019, which is inconsistent with the representations made in the financial statements submitted to the SBA that MBE had cash of approximately $1.37 million at the end of 2018 and approximately $1.8 million at the end of 2019.

## The Submission of Fraudulent Documents to Obtain Approximately $932 Million in PPP Loan Funding

32. Based on my review of email correspondence with RAFAEL MARTINEZ, the defendant, obtained through a judicially authorized search warrant of MARTINEZ's MBE email account, I have learned the following, in substance in part:

a. In or about April 2020, RAFAEL MARTINEZ, the defendant, engaged in discussions with the Company in connection with a proposed partnership between the Company and MBE to fund PPP loans for minority and women-owned small businesses. As part of the Company's due diligence on MBE, the Company requested certain documents and information from MARTINEZ. On or about April 27, 2020, MARTINEZ submitted various documents to the Company, including the same fraudulent 2019 Audited Financial Statements for MBE that were submitted to the SBA.

b. On or about May 13, 2020, RAFAEL MARTINEZ, the defendant, on behalf of MBE, entered into a participation purchase and servicing agreement with the Company, pursuant to which the Company agreed to provide $100 million to MBE to fund PPP loans that were purchased by the Company and serviced by MBE. As part of this agreement, MARTINEZ represented that MBE was in compliance with applicable laws and regulations and had complied with all documentation requirements under the PPP program and SBA regulations. The same day, on or about May 13, 2020, the Company transferred $100 million to a bank account in the name of Republic Group controlled by MARTINEZ and his daughter.

33. Based on my review of a CNBC interview of RAFAEL MARTINEZ, the defendant, on or about May 19, 2020, regarding the

partnership between the Company and MBE to provide funding for PPP loans to diverse businesses, MARTINEZ stated, in substance and in part, the following: "[W]e have to go by the guidelines that SBA set . . . . This is a call to action. What we're trying to do is make sure we vet everybody to the standards of the SBA and assure that this money goes out because the next step in this procedure is working with a depository bank to multiply [the Company's] investment into a billion dollars or more."

34. In or around the same time that RAFAEL MARTINEZ, the defendant, was engaged in discussions with the Company, MARTINEZ entered into a PPP Liquidity Facility with a Federal Reserve Bank (the "FRB Liquidity Facility") to request advances secured by pledges of PPP loans issued by MBE. Pursuant to this FRB Liquidity Facility, from on or about June 19, 2020 through on or about July 21, 2021, MBE received 124 advances totaling approximately $832 million from the Federal Reserve Bank of San Francisco to an MBE bank account opened and maintained in Manhattan, New York.

35. Based on my review of records obtained from the SBA, through the capital obtained from the agreement with the Company and the FRB Liquidity Facility, MBE issued a total of approximately $823 million in PPP loans to approximately 36,600 businesses for the period from May 3, 2020 to June 29, 2021. From these loans, MBE earned a total of approximately $71.3 million in lender fees that were deposited into an account solely controlled by RAFAEL MARTINEZ, the defendant, and his daughter at a bank headquartered in Manhattan, New York.

36. Based on my review of bank records for accounts associated with MBE, Republic Group, and RAFAEL MARTINEZ, the defendant, the PPP lender fees earned by MBE were spent by MARTINEZ on, among other things, the purchase of a villa in the Dominican Republic for over $10 million, a $3.5 mansion located in Franklin Lakes, New Jersey, a chartered jet service, and several luxury vehicles, including a 2018 Porsche 911 Turbo, a 2017 Ferrari 488 Spider, a 2017 Bentley Continental GT, a BMW 750, and a 1962 Mercedes Benz 190.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of RAFAEL MARTINEZ, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

/s/ Sandip Singh w/permission
______________________________
SANDIP SINGH
Special Agent
IRS-CI

Sworn to me through the transmission
of this Affidavit by reliable electronic means,
pursuant to Federal Rules of Criminal Procedure
41(d)(3) and 4.1, this 28th day of February, 2022

Katharine H Parker
__________________________________
THE HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK