M5CPMARA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

       v.                        22 CR 251 (LJL)
                                   Arraignment

RAFAEL MARTINEZ,

           Defendant.

------------------------------x

                              New York, N.Y.
                              May 12, 2022
                              11:01 a.m.


Before:

              HON. LEWIS J. LIMAN,

                        District Judge


                APPEARANCES

DAMIAN WILLIAMS,
    United States Attorney for the
    Southern District of New York
BY:  MICAH F. FERGENSON
    Assistant United States Attorney

WILLKIE FARR & GALLAGHER, LLP
    Attorneys for Defendant
BY:  RANDALL W. JACKSON
    MICHAEL S. SCHACHTER
         AND
MORVILLO ABRAMOWITZ GRAND IASON & ANELLO, PC
BY:  TELEMACHUS P. KASULIS
    ELKAN ABRAMOWITZ

M5CPMARA

(In open court)

(Case called)

MR. FERGENSON:  Good morning, your Honor.  Micah Fergenson for the government.

THE COURT:  Good morning.

MR. JACKSON:  Good morning, your Honor.  Randall Jackson, Michael Schachter, Tim Kasulis and Elkan Abramowitz on behalf of the defendant, Rafael Martinez.

THE COURT:  Good morning.  Good morning, Mr. Martinez.

THE DEFENDANT:  Good morning.

THE COURT:  I understand, Mr. Fergenson, we're here today for the purposes of arraigning the defendant on the indictment and the initial appearance; is that correct?

MR. FERGENSON:  That's correct, your Honor.

THE COURT:  Okay.  Mr. Martinez, I have in front of me the indictment 22 CR 251.  Have you received -- you may be seated.  Have you received a copy of the indictment?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And have you had a chance to review it with your lawyers?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Would you like me to read the indictment to you?

THE DEFENDANT:  No, your Honor.

THE COURT:  How do you plead to the indictment?

M5CPMARA

THE DEFENDANT:  Not guilty, your Honor.

THE COURT:  Thank you.  Sir.

All right.  Let me hear from the prosecution.  Why don't you tell me a little bit about your case, where you stand with respect to discovery, and when the defendant was arrested and indicted, and the conditions of bail?

MR. FERGENSON:  Yes, your Honor.  So this case involves, most broadly speaking, a paycheck protection program fraud.  As detailed -- this defendant was initially arrested on a complaint.  As detailed in a rather extensive complaint, the government charges that the defendant submitted false applications both for a PPP, as it's known, loan for his company, as well as an application to become a PPP lender; that is, a commercial lender that actually issued these PPP loans to other businesses.

The defendant was arrested on that complaint on February -- charged and arrested on February 28th.  He was presented the following day, which I believe was March 1st.  He was then indicted on May 2nd, 2022, in five counts.  The first two counts relate to the -- call it the PPP lender scheme. That first count is wire fraud, the second is false statements to the SBA, the Small Business Administration.

The second two counts relate to the PPP loan scheme. The third count is bank fraud.  The fourth count is false statements to a bank.  And then the last count, aggravated

M5CPMARA

identity theft, is in connection with the PPP loan scheme in which the defendant forged the signature and name of his accountant.  It's in connection with that application.

THE COURT:  Where do you stand with respect to discovery?

MR. FERGENSON:  Yes, your Honor.  So I'll give a brief summary of what it consists of.  It includes subpoena returns from at least 30 different entities.  It includes voluminous financial records, corporate records, tax and accounting records, as well as records relating to how proceeds were spent, including records from a chartered jet service, luxury car dealers.

In addition to those tax returns, there are IRS records for the defendant and his companies, SBA records relating to the defendant and his companies.  These SBA records are actually quite voluminous.  There are over 43,000 documents, and I would say I'm still confirming if we'll be producing those SBA records in their entirety, or if there are some that are actually not rule 16 discovery included in there, but I expect the bulk of it will be produced.

There are records from the federal reserve, which as your Honor may have seen in the complaint, operated a liquidity facility to provide capital to PPP lenders; so $823 million came from the Fed to the defendant's company, MBE.  Those are not as voluminous as SBA.  I think a little over a gigabyte of

M5CPMARA

records.

There's an e-mail search warrant on the defendant's work e-mail, relatively voluminous.  There are over 91,000 documents.  There was an extraction on the defendant's phone seized at his arrest, but it appeared to be wiped.  There was --

THE COURT:  So there's nothing from the phone that you're aware of?

MR. FERGENSON:  That's correct.  Seizure warrant for several bank accounts, and there was a video of the defendant's post-arrest questioning, albeit, I don't believe there was much of substance in it.

I think in light of the voluminous nature, we would anticipate being able to produce it in about three weeks, but perhaps, to be conservative, call it a month, just for technical delays that often come up.

THE COURT:  Besides the search warrant for the e-mail, were there any other search warrants?

MR. FERGENSON:  There was a search warrant for the cell phone at his arrest, but like I said --

THE COURT:  There's nothing that was obtained from that that you could use.  Nothing that was obtained, period?

MR. FERGENSON:  There was an extraction, but the contents of the phone appeared to have been wiped.

THE COURT:  Okay.  And I gather there's something of a

M5CPMARA

post-arrest statement, and any other law enforcement techniques that, from your perspective, that could give rise to a suppression motion?

MR. FERGENSON:  None that I'm aware of, your Honor, or none that come to mind immediately.

THE COURT:  And I'll turn to the defense in a moment, but stay standing for a moment more because I have a couple more questions.

First of all, I take it that the defendant has been released.  What are the conditions of bail?

MR. FERGENSON:  Your Honor, I'm actually not -- I don't have it in front of me right now, but he was released on a negotiated package that included posting his property -- excuse me, posting as security four properties, two in New Jersey, two in SDNY, and I'm not sure if I got that incorrectly, but the defense can correct it.

I was actually not the AUSA on the case at the time of the presentment, but it was a negotiated package.  And I believe he's being supervised by pretrial in New Jersey, which was his --

THE COURT:  District of residence?

MR. FERGENSON:  Correct, your Honor.

THE COURT:  And the last question I've got for you is my standard one, which is, how does the government propose that I proceed?  It seems to me that the next step would be a status

conference, where I hear about any potential motions. But give me your thoughts about next steps and the timing of next steps.

MR. FERGENSON: We agree with that, your Honor, and I would defer, I think in the first instance, to how much time the defense would like to review discovery and assess any potential motions, and as long as that's reasonable, I'm sure it will be fine with the government.

THE COURT: Okay. All right. Let me turn to the defense, a lot of familiar faces on the defense side. Welcome to all of you.

MR. JACKSON: Thank you, your Honor.

THE COURT: So tell me your perspective on next steps and where you think the case should go.

MR. JACKSON: Yes, your Honor, and just to answer the Court's question, I believe AUSA Fergenson described the bail conditions correctly. It's also a $10 million personal recognizance bond secured by the property, the four properties that were described.

Your Honor, given the volume of the discovery, we would request -- we do agree with the Court that a status conference to follow up the production of discovery would be appropriate. We would request something in area of 90 days from now. Assuming that we get the discovery in 30 days, that would give us several weeks to be able to make a determination as to whether there are any applications we need to make and

M5CPMARA

also to be able to advise the Court with regard to additional scheduling.

THE COURT: I think that puts us sometime in the month of August, and I'd like to do it the second week in August. My expectation would be that at that conference, I hear from you with respect to whether you plan to make any motions, we set a date for motions, and we set a tentative trial date for the case.

MR. JACKSON: Yes, your Honor. That would make perfect sense.

THE COURT: Okay. Mr. Fishman, sometime the week of August 8th.

(Pause)

August 11 at 3:00 p.m., does that work for the defense?

MR. JACKSON: Yes, your Honor.

THE COURT: And does that also work for the government?

MR. FERGENSON: Yes, your Honor.

THE COURT: Okay. Before we get to the matter of the Speedy Trial Act, anything further from the defense?

MR. JACKSON: No, your Honor. Thank you.

THE COURT: Anything from the government besides the Speedy Trial Act?

MR. FERGENSON: Only that, your Honor.

THE COURT:  Do you want to make your application?

MR. FERGENSON:  Yes, your Honor.  The government moves to exclude time until the next conference on August 11th under the Speedy Trial Act in order to allow the government to produce discovery, the defense to review it and also assess any potential motions.

THE COURT:  Okay.  What's the defense's position?

MR. JACKSON:  Your Honor, we have no objection.

THE COURT:  Okay.  All right.  The Court will exclude time from today until August 11th, 2022, under the Speedy Trial Act, 18 U.S.C. 3161(h)(7)(A).  I find that the ends of justice outweigh the interests of the defendant and the public in a speedy trial, in that the time from today until August 11th can be used by the government to make production and by the defense to review the production of discovery and to consider any potential motions.

Before we break, I do have an oral order that I'm going to deliver to the government.  It either has been accompanied by or will be accompanied by a written order placed on the docket.

I direct the prosecution to comply with its obligations under *Brady against Maryland* and its progeny to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment, and known to the prosecution.

M5CPMARA

Possible consequences for noncompliance may include dismissal of individual charges or the entire case, exclusion of evidence, and professional discipline or court sanctions on the attorneys responsible.

I will or have entered a written order more fully describing this obligation and the possible consequences of failing to meet it, and I direct the prosecution to review and comply with that order.

Does the prosecution confirm that it understands its obligations and will fulfill them?

MR. FERGENSON:  Yes, your Honor.

THE COURT:  Okay.  Thank you.

Anything further from the government, Mr. Fergenson?

MR. FERGENSON:  No.  Thank you, your Honor.

THE COURT:  Mr. Jackson, anything further?

MR. JACKSON:  No, your Honor.  Thank you.

THE COURT:  Okay.  Good day.  Everybody stay safe and stay healthy and see you in August.

MR. JACKSON:  Thank you, Judge.

(Adjourned)