UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) ) ) |
| - v. - | ) ) |
| RAFAEL MARTINEZ, | ) 22 Cr. 251 (LJL) ) |
| Defendant. | ) ORAL ARGUMENT SCHEDULED FOR ) JANUARY 17, 2023 ) |

**REPLY IN SUPPORT OF DEFENDANT
RAFAEL MARTINEZ'S MOTION TO DISMISS
COUNT ONE OF THE INDICTMENT**

Dated: January 6, 2023
     New York, New York

MORVILLO, ABRAMOWITZ,
GRAND, IASON & ANELLO, P.C.
Elkan Abramowitz
Telemachus P. Kasulis
Russell J. Feldman
565 Fifth Avenue
New York, New York 10017

WILLKIE FARR & GALLAGHER LLP
Michael S. Schachter
Randall Jackson
787 Seventh Avenue
New York, New York 10019

*Attorneys for Defendant Rafael Martinez*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ..................................................................................................................................... 1

    I.      Count One Charges a Scheme to Defraud the SBA, Not the Company or the Federal Reserve ................................................................................................ 3

    II.     The Fees MBE Generated from Servicing Loans after SBA Approval Do Not Make the Alleged Conduct Wire Fraud .................................................... 5

    III.    The Funds MBE Received from the Company and the Federal Reserve after Being Approved by the SBA Also Do Not Make the Alleged Conduct Wire Fraud.................................................................................................... 7

CONCLUSION............................................................................................................................. 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cleveland v. United States*,
    531 U.S. 12 (2000)................................................................................ 2, 5, 6

*Kelly v. United States,*
    140 S. Ct. 1565 (2020)........................................................................ 2, 6, 7

*McNally v. United States*,
    483 U.S. 350 (1987)..................................................................................... 2

*Sanabria v. United States*,
    437 U.S. 54 (1978)....................................................................................... 4

*United States v. Aleynikov*,
    676 F.3d 71 (2d Cir. 2012)........................................................................... 4

*United States v. Blaszczak.*
    --- F.4th ---, 2022 WL 17926047 (2d Cir. Dec. 27, 2022).................................. 6

*United States v. Greenberg*,
    835 F.3d 295 (2d Cir. 2016)......................................................................... 8

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000)........................................................................... 4

ii

**PRELIMINARY STATEMENT**

The government is confused. Count One of the Indictment clearly and unequivocally alleges that Rafael Martinez did "*fraudulently obtain the approval* of the [SBA] for his company, [MBE], to be a non-bank lender through the [PPP], and then . . . *used that approval* to obtain millions of dollars in capital to issue PPP loans and earn lender fees." Indictment ¶ 1 (emphasis added). Count One does not allege that Mr. Martinez defrauded the Federal Reserve. Count One does not allege that Mr. Martinez defrauded the private entity the government refers to as the "Company." Indeed, the Indictment never mentions the Federal Reserve or the Company. Instead, Count One alleges that Mr. Martinez deceived the SBA into approving MBE to act as a non-bank lender. Performing as a non-bank lender is exactly what MBE did, by obtaining capital to successfully issue PPP loans and generating fees.

That is not wire fraud. It has been black letter law since the Supreme Court's decision in *Cleveland* that the object of the alleged deception the government charged in Count One – approval by a government agency to conduct a regulated business – is not property under the wire fraud statute. This holding was confirmed by the high court's decision in *Kelly* and reiterated as recently as last week by the Second Circuit in *United States v. Blaszczak.* There is a separate statute that criminalizes alleged lies to the Small Business Administration, as the government well knows since it is charged in Count Two of the Indictment. But Count One does not state a claim under 18 U.S.C. § 1343 and the government's arguments to the contrary are unpersuasive.

**ARGUMENT**

Tellingly, the government's opposition does not engage with the central contention of Mr. Martinez's motion – namely, that the SBA's right to approve MBE as a non-bank lender is not "property" under the wire fraud statute. The government presumably does not dispute this notion because it cannot. In an unbroken line of cases from *McNally* to *Kelly*, the Supreme Court has

1

held that the federal mail and wire fraud statutes are limited to deceptive schemes that deprive a victim of *traditional* money or property. *Cleveland v. United States*, 531 U.S. 12, 18-19 (2000) (citing *McNally v. United States*, 483 U.S. 350, 358 (1987)).  The Court has admonished that the definition of "property" is not to be read expansively, as "stray[ing] from traditional concepts of property" would "approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress." *Cleveland*, 531 U.S. at 24.  In *Cleveland*, the Court held that the government's intangible right to permit or preclude the operation of a business was not such a "traditional" interest. *Id.* at 23.  In *Kelly*, the Court could not have been clearer: "[A] scheme to alter [a] regulatory choice is not one to appropriate the government's property." *Kelly v. United States,* 140 S. Ct. 1565, 1572 (2020).

Faced with this authority, the government shifts the goalposts.  First, it maintains the Court should not – and perhaps even cannot – entertain Mr. Martinez's motion because the Indictment alleges a scheme to defraud the Federal Reserve and the Company and those allegations must be accepted as true.  Second, the government suggests that the fees MBE generated from operating as a non-bank lender could constitute "money or property" under the wire fraud statute.  And if not that, the government avers in a third point, perhaps the money that the Company and the Federal Reserve provided to MBE to fund loans to minority-owned businesses could suffice?

These contentions are without merit and misapprehend controlling law.  Mr. Martinez's motion to dismiss Count One should be granted.

2

I.       Count One Charges a Scheme to Defraud the SBA, Not the Company or the Federal
         Reserve

The grand jury was very clear in Count One about what was allegedly obtained through fraud:  Rafael Martinez did "*fraudulently obtain the approval* of the [SBA] for his company, [MBE], to be a non-bank lender through the [PPP]."  Indictment ¶ 1.  The Indictment does not say that Mr. Martinez fraudulently obtained funds from the Company and it does not say that he fraudulently obtained funds from the Federal Reserve.  The Indictment notes that Mr. Martinez "used the approval" by the SBA to obtain capital to begin making PPP loans – but that is hardly fraudulent activity.  An entirely innocent individual who engaged in no deception of the SBA in connection with a non-bank lender application would still "use the approval" of the SBA to obtain funding for outgoing PPP loans.  That is the way the business is supposed to work.

This reality makes the government's description of its allegations in the Indictment problematic.  For example, the government claims that "Count One charges a scheme [to] deceive the SBA, the Company, and the Federal Reserve in order to obtain 'millions of dollars' in capital and lender fees."  (Gov. Opp. at 12.)  That is not what Count One says.  Count One alleges no efforts to deceive the Company or the Federal Reserve, and the only "property" it alleges was "fraudulently obtain[ed]" was the approval of the SBA.  Indictment ¶ 1.  Similarly, the government's contention that Mr. Martinez "not only defrauded the Federal Reserve of 'money,' he also defrauded a private entity, the Company, of $100 million" is entirely absent from the Indictment.  (Gov. Opp. at 13.)

The government goes further, claiming that "Count One is properly read to allege that Martinez made false statements to the SBA and the Company, and relied on false pretenses – MBE's supposed status as a legitimate PPP lender – to obtain money from both the Company and the Federal Reserve."  (Gov. Opp. at 13.)  This is doubly wrong.  There is nothing in the Indictment

3

alleging Mr. Martinez made any false statements to the Company, nor anything about Mr. Martinez using "false pretenses."  The Indictment simply states that Mr. Martinez "used th[e] approval" of the SBA to obtain funding for loans, which is presumably a concept the government wishes to avoid because it demonstrates Count One's fatal reliance on government "approval" as the object of the alleged wire fraud.

The government recasts the Indictment in an effort to ward off consideration of the actual allegations returned by the grand jury.  We agree with the prosecution that the Court must accept the factual allegations in the Indictment as true on a motion to dismiss, *United States v. Aleynikov*, 676 F.3d 71, 76 (2d Cir. 2012), but that means the allegations as the grand jury stated them, not as the government might wish them to be*, see United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("[T]he indictment must be considered as it was actually drawn, not as it might have been drawn.") (citing *Sanabria v. United States*, 437 U.S. 54, 65-66 (1978) ("The precise manner in which an indictment is drawn cannot be ignored[.]")).  Instead, the government provides the Court with nearly forty citations not to the Indictment but to the *Complaint* in its "Background" section of the opposition.[1]  Those factual assertions – many of which Mr. Martinez disputes – are not properly before the Court, as they by and large are not included in the Indictment and were not found by the grand jury.  They are irrelevant to this motion, cannot be considered in assessing whether Count One states a claim, and should not be accepted as true by the Court.

Accordingly, any claim by the government that the Court should deny Mr. Martinez's motion because it must accept the factual allegations in the Indictment as true is doomed to fail.

---

[1] The government does so while criticizing Mr. Martinez's opening brief for "ignor[ing] the actual allegations in the Indictment, while seeking to assert facts outside the Indictment[.]" (Gov. Opp. at 14-15).

4

Instead, the allegations in the Indictment make clear that the only "property" the grand jury found to have been defrauded was the "approval" of the SBA – which, as set forth in Mr. Martinez's opening brief, is no "property" at all for purposes of the wire fraud statute.[2]

> II.      The Fees MBE Generated from Servicing Loans after SBA Approval Do Not Make the Alleged Conduct Wire Fraud

The government next suggests that because the "object of the scheme was profit," the fees MBE generated for servicing PPP loans are sufficient to meet the property or money requirement for wire fraud. *See, e.g.,* Gov. Opp. at 10; *id.* at 9 ("The 'money or property' fraudulently obtained as a result of the scheme alleged in Count One [includes] . . . the resulting tens of millions of dollars in loan fees that accrued to MBE . . . ."). This reductive argument is baseless and contrary to binding precedent.

In *Cleveland*, the defendants engaged in a deceptive scheme to obtain video poker licenses. 531 U.S. at 15-17. They did so not for the sake of obtaining a license in and of itself, of course, but to profit from operating a business granted that license. And the *Cleveland* defendants did, in fact, profit to the tune of several million dollars. *See* 531 U.S. at 22 (noting that the state collected 32.5% of net revenue from each video poker machine operated at truck stops and the defendants paid $1.2 million from 1993 to 1995 for the state's "proper share of revenue," thereby implying that defendants made approximately $3.69M in revenue over that same period). But the Supreme Court refused to consider those monies the object of the wire fraud. Instead, the Court correctly focused on what the *deception sought to procure – i.e.*, government approval to run a video poker

---

[2] The government concedes in Footnote 5, for example, that the Indictment does not support one of the arguments it wishes to make and so it must rely on the Complaint. *See* Gov. Opp. at 15 n. 5 ("While not specifically alleged in the Indictment, the Complaint makes clear, and the Government expects to prove at trial . . . ."). This is improper.

business – not the amounts of money that would (and did) flow into the business once it started operating based on that approval. *Cleveland*, 531 U.S. at 20-27 (stating that the "question presented is whether, for purposes of the federal mail fraud statute, a government regulator parts with 'property' when it issues a license" and for the reasons discussed therein, holding that "such a license is not 'property' in the government regulator's hands"). Since government approval to run a video poker business cannot be property, in the same way that SBA approval to serve as a third-party lender cannot be property, the wire fraud charge was dismissed. *See Cleveland*, 531 U.S. at 26-27.

The Second Circuit's recent decision in *Blaszczak* confirms this point. *United States v. Blaszczak*. --- F.4th ---, 2022 WL 17926047 (2d Cir. Dec. 27, 2022). In that case, a jury convicted the defendants of wire fraud for deceptively obtaining confidential information from the federal Center for Medicare and Medicaid Services. *Blaszczak*, 2022 WL 17926047, at *1-2. Like the defendants in *Cleveland*, the defendants in *Blaszczak* did not deceive a government agency for their own amusement; they did it to profit on the information through subsequent insider trading in the securities of health care companies. *Id.* at *2. But that they sought to (and ultimately did) monetize this government information did not transform their deceptive scheme – which did not otherwise obtain "property" – into wire fraud. *See id. at* *2, *12. In remanding the wire fraud counts to the district court for dismissal, the Second Circuit held that, "As the Supreme Court recognized in *Cleveland* and emphasized in *Kelly*, the government's right to determine 'who should get a benefit and who should not . . . do[es] "not create a property interest"'" under the wire fraud statute. *Id.* at *11 (quoting *Kelly*, 140 S. Ct. at 1572) (quoting *Cleveland*, 531 U.S. at 23). The same is true here.

6

The Supreme Court's decision in *Kelly* further reinforces a consistent theme: when determining whether the defendants committed property fraud, courts must focus carefully on what the deception sought to procure. In *Kelly*, the defendants engaged in a deceptive scheme to reduce the toll plaza lanes that accessed the George Washington Bridge in order to exact political retribution against a local mayor. 140 S. Ct. at 1568-70. The Court examined whether the object of the defendant's dishonest scheme was the Port Authority's "money or property." *Id.* at 1572-74. Finding that the defendants sought to procure a reallocation of the bridge's access lanes (and not the incidental use of the Port Authority employees' labor), the Court concluded that "a scheme to alter such a regulatory choice is not one to appropriate the government's property" and reversed the defendants' wire fraud convictions. 140 S. Ct. at 1572, 1574.

III.   The Funds MBE Received from the Company and the Federal Reserve after Being Approved by the SBA Also Do Not Make the Alleged Conduct Wire Fraud

Finally, the government pairs the prior flawed argument with the suggestion that the "nearly one billion dollars in fraudulently obtained capital" from the Company and the Federal Reserve can satisfy the "money or property" element based on the alleged deception of the SBA. (Gov. Opp. at 9.)  The government is again in error.

It is worth first identifying what the "billion dollars" is.  According to the government, $100 million of this is funding provided by the Company to MBE to fund PPP loans two weeks after MBE was approved by the SBA as a non-bank lender.  (Gov. Opp. at 7.)  The remaining funds were provided by the Federal Reserve for the same purpose between one and two months later (*id.*), as it became clear that the minority-owned businesses that MBE was servicing were going to need significant additional PPP relief.  The funds that the Company and the Federal Reserve sent to MBE were *precisely* the funds that MBE needed to perform the critical, time sensitive work the SBA had authorized it to perform.  Nowhere in the Indictment – nowhere – does

the government allege that MBE did not perform its function or that it misused these funds in any way.

A return to the Indictment at this juncture is instructive.  Count One alleges that Mr. Martinez did "fraudulently obtain the approval of the [SBA] for his company, [MBE], to be a non-bank lender through the [PPP], and then . . . *used that approval* to obtain millions of dollars in capital to issue PPP loans and earn lender fees." Indictment ¶ 1 (emphasis added).  This allegation is correct in one important respect:  Mr. Martinez did use the approval of the SBA to conduct MBE's non-bank lending operations and obtain the capital needed to *perform the business authorized and expected by the SBA*.  This scenario is directly analogous to *Cleveland*, where the defendants obtained a gaming license through deception and then *used that license* to acquire money from third parties by operating their video poker business.  Just as the defendants' receipt of funds in *Cleveland* did not render the activity wire fraud, the same is true here.

The government's reliance on *United States v. Greenberg* is misplaced. In that case, the Second Circuit joined many of its sister courts in confirming the unremarkable proposition that "the party whose money or property is the object of the scheme" need not be the party "whom a fraudster seeks to deceive."  *United States v. Greenberg*, 835 F.3d 295, 306 (2d Cir. 2016).  But the government attempts to use *Greenberg* to argue that the Indictment sufficiently pleads wire fraud by alleging that Mr. Martinez lied to the SBA "in an effort to obtain money from the Company and the Federal Reserve."  (Gov. Opp. at 14.)  This cannot be the case, otherwise it would have been wire fraud for the defendants in *Cleveland* to have lied to the state in a successful effort to obtain money from their future video poker customers, and it would have been wire fraud for the defendants in *Blaszczak* to have deceived CMS to obtain government information for successful use in "executing securities transactions in [health care company] stock."  *See*

8

Blaszczak Indictment ¶ 81 (wire fraud count).  Neither of those activities were wire fraud, as the

Supreme Court and the Second Circuit recognized, because the focus of the schemes was *obtaining*

*the government license or information*.  The same is true here, where the alleged fraud was focused

on deception to obtain government approval to run a business – and later that government approval

was subsequently used to engage in profitable business operations.[3]

---

[3] Indeed, it is not clear what limiting principle could apply to the government's expansive reading of *Greenberg* to undercut *Cleveland*, *Kelly*, and *Blaszczak*.  If an individual lies to the SBA to become approved as a non-bank lender and he later uses proof of that status and its promise of income to obtain a home mortgage, can the government claim wire fraud because although the SBA was deceived the real victim was the bank?  If the individual uses the proof of his non-bank lender status and promise of income to get a car loan, is the car dealership a victim of wire fraud? The answer to these questions must be no, for the same reason this theory would not and did not work in *Cleveland* and *Blaszczak*.  A plan to monetize the value of wrongfully obtained government information or imprimatur cannot create a wire fraud where it would otherwise not exist.

**CONCLUSION**

For these reasons, as well as those presented in his opening brief, Mr. Martinez respectfully

submits that Count One of the Indictment must be dismissed.

Dated: January 6, 2023
     New York, New York

               MORVILLO, ABRAMOWITZ,
               GRAND, IASON & ANELLO, P.C.

               By:  /s/ Telemachus P. Kasulis
                    Elkan Abramowitz
                    Telemachus P. Kasulis
                    Russell J. Feldman
                    565 Fifth Avenue
                    New York, New York 10017

               WILLKIE FARR & GALLAGHER LLP
                    Michael S. Schachter
                    Randall Jackson
                    787 Seventh Avenue
                    New York, New York 10019

                    *Attorneys for Defendant Rafael Martinez*

10