MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

tkasulis@maglaw.com
(212) 880-9555

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
JASMINE JUTEAU
CURTIS B. LEITNER

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

February 3, 2023

Hon. Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

> Re:    United States v. Rafael Martinez,
>         22 Cr. 251 (LJL)

Dear Judge Liman:

We represent Rafael Martinez in the above-captioned case and submit this letter in support of Mr. Martinez's motion to dismiss Count One of the newly-returned Superseding Indictment.  The government's efforts to evade *Cleveland* and *Kelly* by tinkering with its "to wit" clause cannot save Count One from its pursuit of an invalid theory.  Count One does not charge a wire fraud and it must be dismissed.[1]

## The Superseding Indictment

The Superseding Indictment is identical to the original indictment returned on May 2, 2022 (the "Original Indictment"), save for a single sentence.

The Original Indictment's to wit clause for Count One read, in relevant part: Mr. Martinez did "fraudulently obtain the approval of the [SBA] for his company, [MBE], to be a non-bank lender through the [PPP], and then . . . used that approval to obtain millions of dollars in capital to issue PPP loans and earn lender fees." Original Indictment ¶ 1.

The corresponding to wit clause in Count One of the Superseding Indictment reads:  Mr. Martinez "engaged in a scheme to fraudulently obtain millions of dollars in capital from an

---

[1] For ease of reference, Mr. Martinez has styled this letter as in further support of his motion to dismiss the Indictment even though its arguments address the new superseding instrument.  If the Court prefers, we would be happy to resubmit the letter as a new motion to dismiss Count One of the Superseding Indictment.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lewis J. Liman
February 3, 2023
Page 2

insurance company (the 'Company') and the Federal Reserve Bank of San Francisco, in order to issue loans through the Paycheck Protection Program (the 'PPP'), and thereby to fraudulently earn PPP lender fees, through false and fraudulent pretenses, representations, and documents, including by making false statements to the United States Small Business Administration (the 'SBA') in order to obtain approval for [MBE] to become a non-bank PPP lender.") Superseding Indictment ¶ 1.

**ARGUMENT**

The government has adopted the kitchen sink approach. Faced with black letter law holding that a scheme to obtain government approval is not wire fraud, the prosecution rechristens its allegation as a scheme to obtain money from everyone after that approval was granted. In so doing, the Superseding Indictment embraces the two theories that Mr. Martinez addressed in his Reply Brief of January 6, 2023: namely, (a) that funds received from the Company and the Federal Reserve were the property sought by Mr. Martinez through the alleged deception of the SBA; and (b) that fees generated by MBE for servicing PPP loans in the ordinary course of its business were the property sought by Mr. Martinez through the alleged deception of the SBA. *See generally* Reply Brief at 5-9.

The government is missing the point. These theories are invalid, regardless of how they are articulated in the accusatory instrument. It cannot be the case that deception of the government to obtain its approval or information is transmuted into wire fraud simply because that approval or information impacted the flow of funds. If that were a viable approach, the Supreme Court would not have dismissed the wire fraud charge in *Cleveland*. It would not have dismissed the wire fraud count in *Kelly*. And the Second Circuit would not have dismissed the wire fraud count in *Blaszczak*.

There is already a crime in the federal code for attempting to deceive the Small Business Administration. The government has charged it in Count Two of the Superseding Indictment. The Court should end the government's impermissible efforts to also repackage those allegations as wire fraud. Count One must be dismissed.

   I.    Applicable Law

Title 18, United States Code, Section 1343 makes it a crime to participate in "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." The government must show not only "the defendant engaged in deception but also that an object of that deception was money or property." *See Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020).

The federal circuits are split over the question of whether wire fraud requires "convergence" – that is, whether the party deceived must be the party that possesses the money

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lewis J. Liman
February 3, 2023
Page 3

or property that is the object of the scheme.  *See, e.g.*, *United States v. Blumeyer*, 114 F.3d 758, 767-68 (8th Cir. 1997) (convergence not required); *United States v. Lew*, 875 F.2d 219, 221 (9th Cir. 1989) (convergence required).  Convergence is not required in the Second Circuit.  *United States v. Greenberg*, 835 F.2d 295, 306 (2016).

Even in circuits not requiring convergence, however, not every deception of an entity to obtain money from a third party is cognizable.  In *United States v. Loughrin*, the Supreme Court analyzed the phrase "by means of" in the federal bank fraud statute.  134 S. Ct. 2384, 2392-95 (2014); *see also* 18 U.S.C. § 1344(2) (whoever executes a scheme to "obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, *by means of* false or fraudulent pretenses, representations, or promises" commits a crime) (emphasis added).  In that case, the defendant provided stolen or altered checks to a retailer in exchange for goods, knowing that the retailer would then present the check to the bank the funds were drawn upon for payment.  *Id.* at 2387.

Writing for the majority, Justice Kagan noted that "it is not enough that a fraudster scheme to obtain money from a bank and that he make a false statement [to a third party]. The provision as well includes a relational component: The criminal must acquire (or attempt to acquire) bank property 'by means of' the misrepresentation. That phrase typically indicates that the given result (the 'end') is achieved, at least in part, through the specified action, instrument, or method (the 'means'), such that the connection between the two is something more than oblique, indirect, and incidental. . . . In other words, *not every but-for cause will do*."  *Id.* at 2393 (emphasis added).  The majority concluded that the "by means of" language in the bank fraud statute can only be satisfied where "the defendant's false statement is the mechanism naturally inducing a bank (or custodian of bank property) to part with money in its control."  *Id.*  When the alleged deception is to a third party – not directly to the bank – that relationship is established only when the *deception itself* is also passed along to the bank.  *Id.* ("But no less is the counterfeit check the 'means' of obtaining bank funds when a defendant like Loughrin offers it as payment to a third party like Target. After all, a merchant accepts a check *only to pass it along to a bank for payment*; and upon receipt from the merchant, that check triggers the disbursement of bank funds just as if presented by the fraudster himself.") (emphasis added).[2]

The mail fraud and wire fraud statute contain the same "by means of" limitation.  *See* 18 18 U.S.C. § 1341 (mail fraud to "obtain[] money or property *by means of false* or fraudulent pretenses, representations, or promises) (emphasis added); 18 U.S.C. § 1343 (wire fraud to "obtain[] money or property *by means of* false or fraudulent pretenses, representations, or promises") (emphasis added).  Accordingly, courts have begun to extend the rationale of *Loughrin* to mail and wire fraud cases.

---

[2] Justice Scalia correctly noted the meaningful limitation this rule places upon the statute.  *See Loughrin*, 134 S. Ct. at 2396 (majority's reading of "by means of" as "not just proximate-cause-like directness—the fraudulent statement literally must 'reach the bank'") (Scalia, *J.*, concurring) (citing *Loughrin*, 134 S. Ct. at 2394, n. 8.).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lewis J. Liman
February 3, 2023
Page 4

In *United States v. Berroa*, the First Circuit considered several defendants convicted of mail fraud in connection with their obtaining of licenses to practice medicine through falsified applications to the Puerto Rico Board of Medical Examiners. 856 F.3d 141, 147-48 (1st Cir. 2017). As the Court observed, *Cleveland* "squarely precluded" the government from seeking convictions on the theory that the defendants fraudulently obtained the Board's permission to practice medicine. *Id.* at 149. And so "[p]resumably cognizant of this restriction, the government charged a scheme to . . . use[] their fraudulent licenses to obtain payment for medical services and issue prescriptions." *Id.* In this "effort to circumvent *Cleveland*," however, the government ran "headlong into . . . *Loughrin*." *Id.*

In reaching the conclusion that *Loughrin* should apply with equal force to mail fraud cases, the court noted that the government had offered "no explanation at all for why the same 'by means of' language should be read differently in these two contexts." *Id.* at 150; *see also Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes, . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); *United States v. Saks*, 964 F.2d 1514, 1520 (5th Cir. 1992) ("It is well settled that Congress modelled § 1344 on the mail and wire fraud statutes, and that the usual practice is to look to precedents under those statutes to determine its scope and proper interpretation."). The First Circuit then lost little time in holding that deception of a government agency in an effort to conduct a business that will thereafter generate income is not mail fraud because the receipt of those moneys was not "by means of" the deception of the government. *Id.* at 149-50.[3]

II.    Discussion

The wire fraud theory in the Original Indictment was straightforward, if impermissible: the grand jury charged that Mr. Martinez lied to the Small Business Administration in order to obtain its permission for MBE to conduct business as a non-bank lender. After Mr. Martinez explained that such an allegation was unlawful in light of *Cleveland* and *Kelly*, the government shifted gears, now claiming that lies to the SBA were designed to (a) cause the Company and the Federal Reserve to fund MBE's loans to minority-owned businesses, and (b) cause MBE to generate fees from servicing those loans.

---

[3] The Sixth Circuit appears to have reached a somewhat different conclusion in its recent decision in *United States v. Palma*, 2023 WL 241834, at *4 (6th Cir. January 18, 2023). In that case, the defendant allegedly participated in a conspiracy to deprive car purchasers of property by deceiving a government agency regarding the performance of its vehicles. *Id.* at *1-2. In holding that the district court improperly granted the defendant's motion to dismiss, the court attempted to distinguish *Berroa* principally by noting that (a) *Berroa* dismissed a substantive offense while *Palma* involved a conspiracy charge, and (b) *Berroa* involved individuals attempting to obtain a license to practice a legitimate business while the defendant in *Palma* sought "to induce customers who otherwise would not have bought the vehicles to do so." *Id.* at *4.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lewis J. Liman
February 3, 2023
Page 5

But as with the prosecution in *Berroa*, the government evades Scylla to find Charybdis. The funding obtained from the Company and the Federal Reserve, and the fees generated by the operation of MBE's business, were not money obtained "by means of" the alleged misstatements to the SBA. Instead, the Company and the Federal Reserve provided those funds to MBE *so that MBE could pass them along* to PPP loan applicants (which it did). Similarly, the fees were revenue generated by the legitimate operation of MBE's business, as with the defendants in *Berroa*. The wire fraud theory in Count One fails for the same reason it failed in *Cleveland*, *Kelly*, and *Blaszczak*: because the true object of the alleged deception was government information or imprimatur. Accordingly, Count One must be dismissed.

A.  The monies obtained by MBE were not "by means of" the alleged deception of the SBA

The purpose of Mr. Martinez's application to the SBA for MBE to serve as a non-bank lender was to obtain the permission of the SBA for MBE to serve as a non-bank lender. It was not to obtain money from the Company or the Federal Reserve. Those were steps that MBE had to take in order to conduct its business once it was authorized by the SBA in order to do its job in the PPP program. Nor was it to generate fees. Of course Mr. Martinez anticipated that MBE's work as a non-bank lender would be profitable, but that is nothing other than a natural consequence of running a business – one authorized by the government or otherwise.

In attempting to suggest that the true object of Mr. Martinez's alleged deception of the SBA was anything other than obtaining the approval of the SBA – in a naked and belated effort to avoid *Cleveland* – the government funs afoul of *Loughrin* and *Berroa*. As in those cases, the subsequent money that MBE brought in was in no way "by means of" the alleged deception of the SBA. Instead, the funds from the Company and the Federal Reserve came because those entities made independent business decisions that they wished to fund PPP loans (because it would be – and was – profitable to do so). And the profits that MBE generated were "by means of" the hard work it did performing its designated and approved function in the PPP program, not because of any alleged misstatements to the government.

As the *Berroa* court observed, it cannot be the case that *Cleveland* can be avoided simply by claiming that the defendant hoped to later bring in funds based on having received government approval to conduct a business. Indeed, "medical licenses, much like the gaming licenses at issue in *Cleveland*, almost invariably are sought and obtained in an effort to realize some monetary profit." *Berroa*, 856 F.3d at 151. The same is true here. The reality is that Mr. Martinez made representations to the SBA in order to secure its approval to conduct a lawful business, as the government charged in the Original Indictment. The government maintains that those representations were materially deceptive. The prosecution is entitled to pursue that theory under the crime charged in Count Two of the Superseding Indcitment. But whether that is true or false, that allegation cannot support a wire fraud charge because the object of the alleged deception was regulatory approval and not the subsequent funding and operation of the business.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lewis J. Liman
February 3, 2023
Page 6

B.  The government's position is inconsistent with *Cleveland*, *Kelly*, and *Blaszczak*

The government's argument also proves too much.  If the government were correct that the funds from the Company and the Federal Reserve or the fees generated from MBE's business could satsify the "money or property" element of wire fraud based on earlier alleged deception of the SBA, there is no reason that the wire fraud counts in *Cleveland* and *Kelly* and *Blaszczak* should have been dismissed.  Instead, those cases demonstrate that the government's efforts to plead around their real theory – that Mr. Martinez deceived the SBA in order to obtain its approval – cannot succeed.

In *Cleveland*, the defendants sought to offer video poker gaming at their truck stop in Louisiana.  *Cleveland v. United States*, 531 U.S. 12, 15-16 (2000).  In order to do so, they needed to obtain a license from the state, which they procured by deceiving the gaming board as to their qualifications.  *Id.*  The defendants operated video poker machines at their business for years, making millions of dollars and providing a fixed portion to the state.  *Id.* at 16, 22 (32.5% of revenue from machines to state by statute).

In rejecting the government's claim that this conduct constituted wire fraud, the Supreme Court never suggested that the revenues that the defendants made from using the license would satisfy the statute.  Indeed, such an argument – like the one later rejected by the First Circuit in *Berroa* – is inherently weaker than the argument the Court *did* consider: that a portion of that revenue was provided to the state, demonstrating the economic character of the license.  That argument failed as well.  *See id.* at 23 ("*Even when tied to an expected stream of revenue*, the State's right of control does not create a property interest any more than a law licensing liquor sales in a State that levies a sales tax on liquor.") (emphasis added).  Accordingly, there is no reason to suggest that the fees MBE generated from operating its lawful business based on the permission granted by the SBA can satisfy the "money or property" element of wire fraud.

In *Kelly*, the defendant state workers closed lanes on the George Washington Bridge in order to exact political revenge upon a local mayor.  *Kelly v. United* States, 140 S. Ct. 1565, 1568-70 (2020).  The government claimed that the defendants aimed to deprive the Port Authority of its property interest in those lanes and "of the costs of compensating the traffic engineers and back-up toll collectors who performed work relating to the lane realignment."  *Id.* at 1572.  The first argument failed for the same reason the wire fraud charge was dismissed in *Cleveland*: the allotment of lanes, whether honestly or deceptively, was an exercise of regulatory authority and could not constitute "property."  *Id.* at 1572-73.  Critically, the government's "costs" argument failed no better.  As the Court noted, the "property must play more than some bit part in a scheme: It must be an 'object of the fraud.'  Or put differently, a property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme."  *Id.* at 1573 (citation omitted).  Cutting through the government's arguments about the financial loss to the Port Authority, the Court identified the true goal of the deception in *Kelly*: to influence a government regulatory decision.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lewis J. Liman
February 3, 2023
Page 7

The same is true here.  The government has already honestly stated in the Original Indictment what it truly believes was the object of the alleged deception in this case: the obtaining of the SBA's regulatory permision for MBE to conduct business as a non-bank lender.  *See* Original Indictment ¶ 1.  Everything else the government alleges follows the SBA's decision and is evidence only of MBE operating its business in the manner *authorized by the SBA*.  MBE received funding from the Company and the Federal Reserve in order to make the loans it was *authorized* to make.  MBE generated fees from servicing the loans it was *authorized* to service.  As Mr. Martinez has previously noted – and the government has not contested – there is *no* claim in the Original Indictment, the Superseding Indictment, or anywhere else that MBE serviced loans in any way other than it was authorized to do.  It is not even clear that the Company or the Federal Reserve have any "loss" at all, given that the PPP loans were all guaranteed by the SBA.  Accordingly, it is an ineluctable conclusion here that "any loss to the victim is only an incidental byproduct" of Mr. Martinez's efforts to obtain SBA approval.  *See Kelly*, 140 S. Ct. at 1573.

Finally, *Blaszczak* also proves an insurmountable hurdle to the governemnt.  In that case, an insider at the Centers for Medicare and Medicaid Services deceptively tipped confidental government information through an intermediary to hedge fund employees, who used it to engage in insider trading in the equity markets.  *United States v. Blaszczak*, 56 F.4th 230, 233-34 (2d Cir. 2023).  The Second Circuit held that this conduct is not wire fraud because the object of the deception was "to obtain and promptly utilize" government regulatory information.  *Id.* at 244.  That the information obtained was thereafter deployed to make money in the securities markets was irrelevant to the Court of Appeals; the issue was what was obtained through the deception – *viz.*, the government information.

Because that government information was not property in light of *Cleveland* and *Kelly*, and the money that was made using that property was at best "incidental" to the true object of the scheme, the wire fraud charge could not stand.  The same is true here, where the funding of MBE by the Company and the Federal Reserve and the profits MBE generated were *not* the focus of the alleged deception, which was to obtain the permission of the SBA to conduct the business in the first place.  The government's efforst to recast its allegations to avoid the pitfalls of the Original Indictment only further demonstrate that the activity here may not be charged as wire fraud.  Accordingly, Count One must be dismissed.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lewis J. Liman
February 3, 2023
Page 8

## **CONCLUSION**

   For the reasons set forth herein and in Mr. Martinez's motion papers regarding the Original Indictment, Count One of the Superseding Indictment must be dismissed.

         Respectfully submitted,

         MORVILLO ABRAMOWITZ GRAND IASON & ANELLO, P.C.

         /s/ Telemachus P. Kasulis
         Telemachus P. Kasulis
         Elkan Abramowitz

         WILLKIE FARR & GALLAGHER LLP

         Michael S. Schachter
         Randall Jackson

         *Counsel for Rafael Martinez*

cc:  AUSA Katherine C. Reilly
   AUSA Micah F. Fergensen