## MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

tkasulis@maglaw.com
(212) 880-9555

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
JASMINE JUTEAU
CURTIS B. LEITNER

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

February 14, 2023

Hon. Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

> Re:   United States v. Rafael Martinez,
>        22 Cr. 251 (LJL)

Dear Judge Liman:

We represent Rafael Martinez in the above-captioned case and submit this letter in further support of Mr. Martinez's motion to dismiss Count One of the Superseding Indictment and in response to the government's letter of February 10, 2023 (the "Letter").  We appreciate the opportunity to file this reply and will be brief in response.

The government essentially makes two arguments in the Letter:  first, that alleged false statements to the SBA can support Count One on their own because they induced the Company and the Federal Reserve to release funds and the SBA to pay MBE fees; and second, that Count One of the Superseding Indictment for the first time also contemplates direct deception of non-SBA individuals or entities to release those same funds.  We address each in turn.

### The Alleged Deception of the SBA Cannot Support Count One

There are three potential objects of the alleged deception of the SBA in the wire fraud count in this case: (a) to obtain SBA regulatory approval to conduct MBE business as a PPP non-bank lender; (b) having received that approval, to obtain funds from the Company and the Federal Reserve to issue PPP loans; and (c) having received and distributed those funds in the manner set forth by the PPP program, to obtain fees for the work provided from the SBA.  Although the allegations have been a moving target, the government appears now to be advancing all these possibilities in Count One.  None is legally sufficient.

First, deception to obtain regulatory approval as a theory of wire fraud has been barred

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P. C.

Hon. Lewis J. Liman
February 14, 2023
Page 2

since *Cleveland*.  To the extent that the government is still arguing that the approval itself can be the object of Count One, that theory must be rejected.

Second, alleged deception of the SBA to obtain funds from the Company and the Federal Reserve only works as a theory if those funds were obtained "by means of" the alleged deception.  The government frames this question as a fait accompli because "the Federal Reserve, for example, relied on the SBA's certification of non-bank lenders in issuing capital through the Payment Protection Program Liquidity Facility."  Letter at 4.[1]  But as the Supreme Court has cautioned, "not every but-for cause will do."  *Loughrin*, 134 S. Ct. at 2393.   Both the majority and the dissent in *Loughrin* recognized that sufficient causation will only be present when the deception somehow finds its way to the third-party property holder.  *Id.* ("But no less is the counterfeit check the 'means' of obtaining bank funds when a defendant like Loughrin offers it as payment to a third party like Target. After all, a merchant accepts a check *only to pass it along to a bank for payment*; and upon receipt from the merchant, that check triggers the disbursement of bank funds just as if presented by the fraudster himself.") (emphasis added); *id.* at 2396 (complaining that majority has adopted "not just proximate-cause-like directness—the fraudulent statement literally must 'reach the bank'") (Scalia, *J.,* concurring) (citation omitted).

In any event, it remains bizarre for the government to suggest that the object of an alleged deception of the SBA by Mr. Martinez would be for MBE to obtain the funds from the Company and the Federal Reserve for the simple reason that MBE simply thereafter *provided* those funds to entities that needed PPP loans.  This was a step that MBE needed to take to run the very business the SBA had approved it to perform.

Third, the theory that Mr. Martinez deceived the SBA to obtain fees for participating in the PPP lending program is a nonstarter.  Profiting on a business licensed by the government is not wire fraud even if that license was obtained through deception.  *Cleveland*, 531 U.S. at 16, 22 (receipt of millions of dollars in revenue based on government approval to run video poker business insufficient to establish wire fraud).  As we have repeatedly said in every submission on this issue, *nowhere* does the government allege that MBE did not service loans in the manner it was authorized to do.  The government has never contradicted this.[2]  The government continues

---

[1] In the Letter, the government continues its practice of citing to the Complaint for factual assertions not present in the Superseding Indictment.  *See* Letter at 4 ("Complt. ¶ 18").  Mr. Martinez has no way of knowing if these factual assertions were presented to – or even rejected by – the grand jury.  What is clear is that they are not present in the Original Indictment or the Superseding Indictment and so should not be credited.

[2] The government's suggestion that it could establish wire fraud by averring that Mr. Martinez may have deprived the SBA of the *information* necessary to make a "fundamentally economic decision" (Letter at 6) invokes the specter of the disfavored "right to control" theory of wire fraud.  *See, e.g., United States v. Percoco*, 13 F.4th 180 (2d Cir. 2021).  From an abundance of caution, we object to any reliance by the government or the Court on such a theory given the grant of certiorari in *Ciminelli v. United States*, 21-1170 (cert. granted); *see also* https://www.nytimes.com/2022/11/28/us/politics/supreme-court-corruption-cuomo.html (reporting on skepticism of the right to control theory by the Justices at oral argument).

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lewis J. Liman
February 14, 2023
Page 3

to harp on the idea that Mr. Martinez allegedly deceived the SBA not "for its own stake, but to put the defendant and MBE in a position to collect those millions of dollars [in fees]."  Letter at 5.  But that was true in *Cleveland* too, where the ultimate goal was to use a government license to obtain money by running a business.

The holding in *Cleveland* unsurprisingly dovetails with the teachings of *Loughrin*.  The fees generated by MBE for its participation in the PPP program were in no way "by means of" any alleged deception of the SBA; instead, they were "by means of" MBE's successful servicing of loans in the manner the SBA *intended* it to do.  The First Circuit reached an analogous conclusion in *Berroa*, when they found that the government could not evade *Cleveland* simply by pointing to the money a person would make when running a business pursuant to government authority.  *Berroa* at 149.

The government attempts to distinguish *Berroa* by focusing on temporal nexus, and they quote the court's observation that the medical licenses obtained in that case "cannot be said to have 'naturally induced' healthcare consumers to part with their money *years later*."  Letter at 4 (emphasis in Letter but not in *Berroa*).  The government essentially argues that because there was a longer gap between the deception and the deprivation of funds in *Berroa* than here, that was not wire fraud but this is.  But the government takes this quotation out of context.  Earlier in *Berroa*, in reciting the facts, the First Circuit stated: "More specifically, the defendants allegedly used their fraudulent licenses to obtain payment for medical services and issue prescriptions.  They *continued to write prescriptions* at least until about two to three years after receiving their licenses."  *Berroa*, 856 F.3d at 149 (emphasis added).  There was no meaningful gap in *Berroa* either.  Just as here, an individual obtained government permission to run a business and then began doing so.  The profits of that business did not transform the effort to receive government approval into wire fraud, regardless of whether those efforts included deception.

Instead of *Berroa*, the government refers the Court to *Palma*.  But it is *Palma* that is distinguishable.  The government cites the most salient line of the opinion but appears not to appreciate its import:  In *Berroa*, "the purpose of fraudulently obtaining medical licenses was *to practice medicine*," whereas in *Palma* "the goal of [the deception was] to induce customers who otherwise would not have bought vehicles to do so."  *Palma*, 2023 WL 241834, at *4 (emphasis added); *see also* Letter at 4.  Just as with the defendants in *Berroa*, the purpose of the alleged deception of the SBA here was to obtain approval to run an otherwise legitimate business, not to sell anything to anyone through deception.

In sum, Count One cannot permissibly rest upon any alleged deception of the SBA, whether dressed as an effort to obtain its regulatory imprimatur, the funds of the Company and the Federal Reserve, or the fees for operating MBE as a profitable business.  The crime charged in Count Two is the proper vehicle for raising such alleged deception in an indictment.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lewis J. Liman
February 14, 2023
Page 4

## **The Alleged Deception of Nameless Others Cannot Support Count One**

The government takes Mr. Martinez to task for failing to respond to the Superseding Indictment's claim that the alleged deception of the SBA is only "one category" of the "false and fraudulent pretenses, representations, and documents" by which he hoped to obtain money or property. Letter at 8. A fair point but for the fact that the Superseding Indictment gives no guidance whatsoever on who the other allegedly deceived parties could be or what the deceptions might be about. After months of briefing on this issue, including valiant but doomed efforts by the prosecution to defend the Original Indictment, the government is simply saying, "Don't worry about that, he lied to some other people too."

In defending this ersatz approach to prosecution, the government plays the hits. It first observes that the "to wit" clause in an indictment does not have set forth the "precise facts it intends to prove at trial." *See* Letter at 8 (citing, *inter alia*, *United States v. Bastian*, 770 F.3d 21, 221 (2d Cir. 2014)). But this is not a question of setting forth "precise facts." This is a question of knowing what the protean Count One is actually about. After seven months of preparing to defend against charges that he allegedly misled the SBA, Mr. Martinez must now pivot to answer charges that he misled . . . whom? Certainly the Superseding Indictment does not say. The only allegedly deceived party that the Superseding Indictment *does* name – the SBA – is one that cannot support wire fraud liability, for the reasons set forth above and in Mr. Martinez's prior three briefs.[3]

The government next rushes to argue that any efforts to find out what Count One is about – even now, less than three months before trial – must inevitably fail. *See* Letter at 8-9 ("The Government is not required to list all of the false representations, documents, and statements made in furtherance of the charged fraud in the Indictment, nor is the absence of such an exhaustive list a reason for dismissal.") (citing cases). But no one is suggesting that the Superseding Indictment must set forth an "exhaustive list" of anything. The concern is that the only factual information that the Superseding Indictment does recite – that deception of the SBA can support Count One – points to a legally insufficient theory barred by black letter law. The government is correct that motions to dismiss an indictment are infrequently granted, but when they are it is because the instrument makes clear it relies upon a non-cognizable cause of action. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). That remains the case here.

---

[3] Indeed, the government's devotion to a theory of the case wholly dependent on alleged deception of the SBA continues to peek through the curtains in its briefing. *See, e.g.,* Letter at 2 n. 1 ("The defendant's goal was simple – to obtain millions of dollars to which he was not entitled. The scheme he deployed to achieve that goal was, by necessity, far less straightforward. In order to be eligible to seek PPP capital from the Federal Reserve – and to partner with the Company – the defendant had to be able to represent that his company could issue PPP loans; that *required obtaining approval* of the SBA as a PPP lender. *Only having done that* could the defendant collect capital from the Company and the Fed and, only after having used that capital to issue PPP loans could he collect fees from the SBA.") (emphasis added). Entirely absent from this recitation of Mr. Martinez's alleged "complex and multi-faceted scheme," *id.*, is any hint of deception of entities beyond the SBA.

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO P.C.

Hon. Lewis J. Liman
February 14, 2023
Page 5

## **CONCLUSION**

For the reasons set forth herein and in Mr. Martinez's prior papers, Count One of the Superseding Indictment must be dismissed.[4]

Respectfully submitted,

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO, P.C.

/s/ Telemachus P. Kasulis
Telemachus P. Kasulis
Elkan Abramowitz

WILLKIE FARR & GALLAGHER LLP

Michael S. Schachter
Randall Jackson

*Counsel for Rafael Martinez*

cc:    AUSA Katherine C. Reilly
       AUSA Micah F. Fergensen

---

[4] In the event that the Court declines to dismiss Count One at this stage, Mr. Martinez respectfully requests a bill of particulars setting forth as to Count One: (a) who the alleged deceived parties referenced for the first time in the Superseding Indictment are, (b) what the alleged material misrepresentations or omissions made to those parties and the SBA were, (c) when the alleged material misrepresentations or omissions were made, and (d) who made those alleged material misrepresentations or omissions (if not Mr. Martinez). If Mr. Martinez must pivot to defending a different theory of prosecution in only a few months, these particulars are absolutely necessary to preserve his Fifth and Sixth Amendment rights to a fair trial.