N2H5marA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                    New York, N.Y.

             v.                              22 Cr. 251 (LJL)

RAFAEL MARTINEZ,

             Defendant.

------------------------------x

                                             February 17, 2023
                                             10:10 a.m.


Before:

                    HON. LEWIS J. LIMAN,

                                       U.S. District Judge


                         APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  KATHERINE C. REILLY
     MICAH FERGENSON
     Assistant United States Attorneys

MORVILLO ABRAMOWITZ GRAND IASON & ANELLO, PC
     Attorneys for Defendant
BY:  TELEMACHUS P. KASULIS
BY:  ELKAN ABRAMOWITZ
          -AND-
WILLKIE FARR & GALLAGHER, LLP (NY)
BY:  RANDALL W. JACKSON

(Case called)

THE DEPUTY CLERK:  Starting with counsel for the government, please state your appearance for the record.

MS. REILLY:  Good morning, your Honor.  Katherine Reilly for the government, and with me at counsel table is AUSA Micah Fergenson.

THE COURT:  Good morning.

MR. KASULIS:  Good morning, your Honor.  Tim Kasulis and Elkan Abramowicz, from Morvillo Abramowicz; and Randall Jackson from Willkie Farr for Mr. Martinez.

THE COURT:  Good morning.

So, we are here today first for the arraignment of Mr. Martinez on the superseding indictment, and then for whatever argument the parties want to make with respect to the motion to dismiss the Count One of the superseding indictment. Let me start with the arraignment.

Mr. Martinez, let me address myself to you.  Have you received a copy of the superseding indictment?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Have you read it?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Have you discussed it with your lawyer?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Would you like me to read it to you?

THE DEFENDANT:  No, your Honor.

N2H5marA

THE COURT:  How do you plead to the superseding indictment?

THE DEFENDANT:  Not guilty, your Honor.

THE COURT:  Anything further by way of arraignment that the government would suggest?

MS. REILLY:  No, your Honor.

THE COURT:  OK.  You may be seated.

I have read the papers on the motion to dismiss.  It is well briefed and I expect I will be able to issue you an opinion shortly.  Is there anything further that the defense would want to add?

MR. KASULIS:  Just a couple of brief points with the Court's permission?  I appreciate it, your Honor.

This is not a situation obviously in which we are addressing the original indictment anymore, but I think it is important to keep in mind, and I would suggest for the Court's consideration, that the original theory -- the only theory espoused in the original indictment is that Mr. Martinez allegedly deceived the Small Business Administration in order to obtain its approval for MBE to run the non-bank PPP business.  That theory of the prosecution is still at the heart of the revised Count One wire fraud charge in the superseding indictment.  The alleged deception of the SBA is the only alleged deception that is spelled out.  There are, of course, references to deception of other parties, but we have no idea

who those parties are, we have no idea what that alleged deception was, when it was, what it was about. So, as we say in our papers, your Honor, because the center of the revised Count One in the superseding indictment is still the impermissible, barred-by-Cleveland approach articulated in the original indictments of Count One, we do believe that Count One in the superseding instrument should be dismissed.

In the event that the Court has a differing view, because the government has added these additional allegations in Count One, we very much need particulars to be able to prepare a defense for trial.

The original indictment has been obtained for the last seven, eight months now I think. We have been preparing our defense in light of those allegations in light of that theory. Whatever you say about Count One in the original indictment, at least it was clear. It was invalid, we submit, but it was invalid in a very clear way. Count One of the superseding indictment, on the other hand, is more opaque and I think purposefully so by the government. We can no longer tell what exactly the government even has a theory about anymore. So, if we are planning to go to trial this year, we very much need assistance in being able to suss out what the government intends to do in its case-in-chief, your Honor.

THE COURT: You are going to trial on May 1st. I do have a couple of questions for you.

N2H5marA

MR. KASULIS:  Certainly, your Honor.

THE COURT:  First of all, the language that you used was quite specific and I paid attention to it.  You used the language spelled out, and what would be helpful to me is what your best case is for the proposition that the specificity that you are asking for is appropriate and required in an indictment.  I didn't see it in your papers.

MR. KASULIS:  I don't think there is, to be candid with the Court.  I don't think there is a case that says the level of specificity I am speaking about here, your Honor, is necessary to be spelled out in the indictment as the Court says.  I agree.  I wish there were such a case, I would have brought it to the Court's attention.  But I think what dovetails with that, your Honor, is in a situation in which the government and the grand jury are not spelling out in any greater detail in the indictment for whatever reasons, legitimate or otherwise, strategic or otherwise the government may have, that's all the more reason why particulars are required to allow us to prepare the defense.  And, of course, a bill of particulars is well within your Honor's discretion.  If it is a complicated case, as the government says in its papers that it is, and it involves a shift, a pivot in the theory from the way it was originally articulated a year ago to the way it is now in the run-up to the trial, we very much need that assistance in order to safeguard Mr. Martinez' Fifth and Sixth

N2H5marA

Amendment rights.

THE COURT:  So, let me ask you a question about your request for particulars.  First of all, tell me what it is limited to?

MR. KASULIS:  I'm sorry.  I couldn't hear you, your Honor.  I apologize.

THE COURT:  What is it limited to when you are asking for particulars?  Is it limited to just what is in your footnote 4?

MR. KASULIS:  Yes, your Honor.  I think that would be sufficient.

THE COURT:  And then I guess two related questions.  Assuming that I read your footnote 4 as a request to be permitted to make a motion out of time for a bill of particulars, how quickly would you be able to make that motion and why should I be permit it to be made at this point?

MR. KASULIS:  Your Honor, we can make it in a week.  We can certainly get it done in whatever schedule the Court prefers.  The question why you should permit it is because I think the original motion schedule was in light of the original indictment.  When the government returned a superseding indictment, the Court very graciously gave us permission to file supplementary papers in connection with our motion to dismiss Count One.  The bill of particulars issues issue has arisen only in connection with the return of the superseding

indictment.  We see the two issues as related because we continue to believe that Count One can be dismissed but if the Court disagrees -- and I understand the Court's concerns about this argument -- if the Court disagrees, the motion for a bill of particulars is only related to the superseding indictment which was returned just a few weeks ago.

THE COURT:  And to accept that argument I need to accept your underlying proposition that there is a material difference between Count One in the original indictment and Count One in the superseding indictment?

MR. KASULIS:  I'm not sure if you need to accept it, your Honor.  Like, I think you could say I disagree with you, Mr. Kasulis, about whether the shift -- and there is a shift -- is material or not.

THE COURT:  I'm not sure there is a shift but I guess I need to -- you are saying I need to accept that proposition.

MR. KASULIS:  I am saying, your Honor, there is a shift.  In the original indictment the only articulated theory wasn't a legal one, an invalid one, one that the government now I think does not intend to make the centerpiece of their presentation to the jury, the argument barred by Cleveland. They said the SBA was deceived by Mr. Martinez and the property, the thing, the object of that alleged deception was regulatory approval, the ability to run MBE as a going concern.

In the superseding indictment, in an obvious attempt

to short circuit it, the Cleveland argument that we had briefed before the Court, they say now, yes, the SBA was deceived. But, also, other parties, who they do not name, are also deceived, and that that is not the only material change, of course, and the property that triggers wire fraud liability or exposure, I suppose, is no longer just the regulatory approval of the small business administration.

THE COURT:  It was never just -- I mean, you knew from the letter that the government submitted that the property that they believed was subsumed within Count One of the original indictment was not regulatory approval, that it was the capital from the Federal Reserve Bank and the -- capital C -- Company.

MR. KASULIS:  When you say the letter, your Honor, I'm sorry.  Which document?

THE COURT:  At least from the government's opposition to your original motion.

MR. KASULIS:  Oh.

THE COURT:  So you have known for a long time that that was what the government's theory was.

MR. KASULIS:  But that theory was not articulated in the original indictment.

THE COURT:  They believe it was, so if I were to side with them it seems to me that your request for particulars would be pretty late.

MR. KASULIS:  I guess I see the Court's point, that if

N2H5marA

we are entirely wrong and we should have foreseen that the government was going to argue to the jury in their case-in-chief the deception of multiple parties beyond the SBA and the object of that deception not just being the ability to run MBE as a business, but also to obtain, through deception, money from the company as they call it in the indictment, and the Federal Reserve, and the fees generated by MBE, as to which you know we have arguments on each point and the Court has seen those, then I take the Court's point.  But to be completely frank, your Honor, we view the case in he way that we briefed the case.  That's what the indictment said.  If the government wanted to raise these other theories, they could do so, and they have done so now in the superseding indictment, but that's why the bill of particulars motion, were the Court inclined to grant me the ability to do one, would be timely.

THE COURT:  All right.  I have got the argument.

MR. KASULIS:  Thank you, your Honor.

THE COURT:  Let me hear from the government, anything the government wants me to so know.

MS. REILLY:  I will be very brief, your Honor.  We have briefed the issue extensively and I don't want to go back and rehash them, so I will just touch briefly on the points you have been discussing with Mr. Kasulis.

Most importantly, it is certainly the government's position and in fact the case looking back to the superseding

indictment and the indictment before it, that there has been no pivot, no change in theory.  The object of the fraud, the millions of dollars in capital and associated lenders' fees, are explicitly called out in the to wit clause in the original indictment, so I think it is disingenuous for the defense to argue that it was news to them that those millions of dollars in fees and capital might have been the object of the charge alleged.

The case in this count has always been about property and not approval, and the decision to seek a superseding indictment was in no way a concession to the contrary.  In fact, as the government articulated in its letter seeking the Court's permission to seek a superseding indictment before the motion was decided, we made clear that while the to wit clause articulated the scheme as we believe it existed as charged in the original indictment, a scheme to obtain lenders' fees and capital through a variety of false statements made to the SBA, and others, we thought in an abundance of caution it made sense to revise the to wit clause to address any alleged ambiguity that the defense had identified.  We have done that now.  The core of the scheme, however, remains the same.

THE COURT:  Why don't you pivot, so to speak, to the request for particulars.

MS. REILLY:  Absolutely, your Honor.  I'm happy to pivot in this case, not having done so earlier.

N2H5marA

If the defense seeks particulars, we would seek an opportunity to brief that.  As your Honor, of course, is well aware, in a case like this one where extensive discovery has been produced, where there is a detailed complaint that gives notice of allegations, a bill of particulars is rarely granted. I think it is important to note that a bill of particulars cannot and should not be a strategic or discovery device, it is really a question of notice and here, as we have been discussing, the defense has been on notice for quite some time.

THE COURT:  So, if the defense is making their motion by one week from today, would you be able to put in your response one week from their papers?

MS. REILLY:  Yes, your Honor.

THE COURT:  And then let me look at the calendar.  So the defense motion for particulars, limited to what is in footnote 4 on page 5 of the letter of February 14th at Docket no. 53, is due the 24th of February, the government response is due March 3, and any reply is due March 7th, and then I will take it on the papers.

Is there anything else from the government that we should address today?

MS. REILLY:  Nothing, your Honor.

THE COURT:  Anything else from the defense?

Mr. Jackson?

MR. JACKSON:  Thank you, Judge.

N2H5marA

Your Honor, at the risk of running headlong into a statement that the Court made a few moments ago, I am going to request that the Court consider if the Court ends up allowing the government to go forward on Count One, which as we have already asserted we don't believe the Court should, we would request that the Court consider whether some additional time might be built into the trial schedule and it is basically for two reasons.  One, I think as Mr. Kasulis asserted, we have, in good faith, really have had a very different understanding of what the case was than what is charged in the superseding indictment and for a number of strategic reasons it makes a difference that there is now a new superseding indictment.  I will say that the superseding indictment here, I understand what the AUSAs are saying about why they did it, etc., but they requested that the Court not go forward on oral argument on this motion until they superseded, and I submit that that's because they know that had they gone forward with the theory that they are now going forward with on the original Count One, they would have run a severe risk of constructive amendment of the indictment because it is a different case.  Putting that aside -- I'm not rearguing that motion -- I'm just saying that some additional time would be extremely helpful to us.  I put no fault on the AUSAs for the second point that I want to make about this, but we are still receiving discovery.  I think they have, in good faith, been giving us discovery as they have

gotten it and we appreciate it, but we have gotten significant discovery in the last week.  I mean, when you combine the discovery situation with the fact that we have a brand-new indictment that, from our perspective, does present a very new theory of the case and I understand AUSA Reilly's point about their theory of notice.  That has nothing do with the amount of time that is appropriate for us to have in terms of adequately investigating and preparing for trial.

So, if the Court is inclined at all, I think that we obviously want to go forward this year.  We have -- I would tell the Court in the numerous cases I have done in this court house I have almost never asked for an extension.  In fact, recently we were pressing the government in the opposite direction where we were repeatedly opposing their requests for extensions and arguing for a speedy trial in one of our recent cases because we very much appreciate the scheduling of trials is an important matter and we think it is generally in our client's interest, including in this one, to have the matter resolved in a timely fashion, but we do have an obligation to adequately prepare.  And so, we would just ask the Court if the Court decides that the government can go forward on the superseding Count One, to consider whether there are any dates slightly later in the year where the Court would be willing to go forward with the trial on that schedule.

THE COURT:  I will hear from the government in a

N2H5marA

moment.

Mr. Jackson, with respect to your first basis for an adjournment of the trial, I reject it. I don't know subjectively what the defense was thinking about the original indictment, but I do know that reading the original indictment the defense should have anticipated what was contained in the superseding indictment. The argument that was made on the motion to dismiss the original indictment was very well done. I'm not sure that it would have been meritorious but it was very well done in trying to pigeonhole the original indictment into language that would have made it invalid under Cleveland.

Again, I don't know that the original argument would have succeeded, but the fact that you framed an argument so that it would fit within the Cleveland case does not mean to me that when the indictment is amended to make it even more clear that it was not a Cleveland case that there is some kind of prejudice. But, the issue of discovery is one that I will hear from the government on as well as the request for an adjournment.

MS. REILLY: Your Honor, on discovery, we have been making ongoing productions of discovery on a rolling basis as soon as we receive it and, of course, as is almost always the case that in the lead-up to trial there are materials that roll in beyond our control and we produce them as quickly as we can. I don't think that that discovery has been voluminous and

N2H5marA

particularly compared to the core of the discovery, the e-mail search warrant, the e-mail productions, the other subpoena productions which were produced very promptly upon indictment. So, I don't think there is anything about the discovery situation in this case that there is need for an adjournment or differentiates it from any other similarly situated case.

In terms of the adjournment, I anticipate that the government would oppose such an adjournment. If there is a formal request being made I would like to take a moment to discuss it with my colleague and look at everyone's trial schedules, but I believe that this case is ready for trial and should proceed to trial on May 1, as scheduled.

THE COURT: I'm going to confer with my deputy for a moment, if you want to confer with your colleague you can. I'm very much disinclined to grant an adjournment.

From the government's perspective, remind me how long the trial is.

MS. REILLY: I would anticipate about two weeks, your Honor.

THE COURT: And I suspect that, Mr. Kasulis, that you are not going to be able to tell me whether there is a defense case.

MR. KASULIS: Not yet, your Honor. I'm sorry.

THE COURT: OK.

(Pause)

N2H5marA

THE COURT:  Does the government have a position?

MS. REILLY:  Your Honor, as imagined, we oppose the request for adjournment, we think it should go forward on May 1.

(Pause)

THE COURT:  So, what I can do is move the trial three weeks later to May 22, if that would work for the government and for the defendants.

MS. REILLY:  Your Honor, AUSA Fergenson has preplanned international travel for two weeks beginning around Memorial Day so that date would not work for the government.

THE COURT:  OK.

MR. JACKSON:  I do want to say those additional weeks would be helpful to the defense and I didn't want to step on the international travel, but I will just -- it is entirely possible that we will have no defense case but I don't think that you could reasonably plan for trial on Memorial Day regardless because we very well may have a defense case.  We have had defense case in my last three trials that lasted for more than a week, so.

THE COURT:  I'm going to keep it at May 1.  That's the date that I had set.  I had set it as a firm trial date.  So, I'm going to get the papers on the request for particulars and I will get you a decision on that quickly, and then the other dates are set in the minute entry that I had issued you in

N2H5marA

those answers in August.

Anything else from the government?

MS. REILLY:  Nothing further from the government.

THE COURT:  From the defense?

MR. KASULIS:  No, your Honor.

THE COURT:  All right.  See you, all.  Have a good weekend.  Thank you.

oOo