

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 3, 2023

**BY ECF**
The Honorable Lewis J. Liman
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

> Re:   *United States v. Rafael Martinez*, S1 22 Cr. 251 (LJL)

Dear Judge Liman:

The Government submits this letter in opposition to defendant Rafael Martinez's motion for a bill of particulars. As set forth below, the defendant's motion is without merit and should be denied.

## I.   Background and Procedural History

On or about February 28, 2022, defendant Rafael Martinez was charged by Complaint (the "Complaint"), arrested, presented, and released on bail. *See* Complaint, ECF No. 1; ECF Nos. 2-5. The Complaint is seventeen pages long and describes how Martinez submitted a fraudulent application to the United States Small Business Administration (the "SBA") for Martinez's company, MBE Capital Partners, LLC ("MBE"), to become a lender in the Paycheck Protection Program ("PPP"). *See* Complaint ¶¶ 24-31. The Complaint also describes how Martinez fraudulently obtained approximately $932 million in PPP loan funding, including by submitting fraudulent documents to a life insurance company (the "Company"), which subsequently provided MBE approximately $100 million in capital, and by seeking approximately $832 million in capital toward PPP loans from the Federal Reserve Bank of San Francisco. *See* Complaint ¶¶ 11-13, 32-35.

On or about May 2, 2022, the grand jury returned a five-count indictment (the "Indictment") against Martinez, charging him in Count One with engaging in wire fraud, in violation of 18 U.S.C. § 1343, from approximately April 2020 through at least February 2022, including by "us[ing] [the] approval [from the SBA to be a non-bank PPP lender] to obtain millions of dollars in capital to issue PPP loans and earn lender fees." Indictment, ECF No. 18, at 2. On or about December 2, 2022, Martinez moved to dismiss Count One, relying primarily on *Cleveland v. United States*, 531 U.S. 12 (2000). On or about January 18, 2023, the grand jury returned a five-count superseding indictment, again charging Martinez in Count One with engaging in wire fraud, in violation of 18 U.S.C. § 1343, from approximately April 2020 through at least February 2022.

Hon. Lewis J. Liman                                                                              Page 2
March 3, 2023

The sole difference between Count One of the Indictment and Count One of the Superseding Indictment is in the "to wit" clause. Specifically, the "to wit" clause of Count One in the Indictment provides: "MARTINEZ used false and fraudulent pretenses, representations, and documents to fraudulently obtain the approval of the [SBA] for his company, [MBE], to be a non-bank lender through the [PPP], and then MARTINEZ used that approval to obtain millions of dollars in capital to issue PPP loans and earn lender fees."  The "to wit" clause of Count One of the Superseding Indictment provides: "MARTINEZ engaged in a scheme to fraudulently obtain millions of dollars in capital from an insurance company (the "Company") and the Federal Reserve Bank of San Francisco, in order to issue loans through the [PPP], and thereby to fraudulently earn PPP lender fees, through false and fraudulent pretenses, representations, and documents, including by making false statements to the [SBA] in order to obtain approval for MARTINEZ's company, [MBE], to become a non-bank PPP lender."

On or about February 3, 2023, defense counsel filed supplemental briefing in support of its renewed motion to dismiss Count One of the Superseding Indictment.  On February 10, 2023, the Government filed its supplemental opposition.  ECF No. 52.  On February 14, 2023, the defense filed its supplemental reply, raising for the first time, in a footnote, an alternative request for a bill of particulars should the Court deny the motion to dismiss.  ECF No. 53, at 5 n.4.

On February 17, 2023, following oral argument, the Court denied the defendant's motion to dismiss.  *See* Memorandum and Order, ECF No. 56, at 4-5.  The defendant's motion for a bill of particulars as to Count One of the Superseding Indictment followed.

## II.     Applicable Law

Rule 7(f) of the Federal Rules of Criminal Procedure permits a defendant to seek a bill of particulars where necessary to "prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam).  Thus, "'[a] bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.'"  *United States v. Berganza*, No. 03 Cr. 987 (DAB), 2005 WL 372045, at *5 (S.D.N.Y. Feb. 16, 2005) (quoting *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990)).  If the information the defendant seeks "is provided in the indictment or in some acceptable alternate form," such as in the discovery materials produced to the defendant, no bill of particulars is required.  *Bortnovsky*, 820 F.2d at 574; *United States v. Spy Factory*, 960 F. Supp. 684, 690-91 (S.D.N.Y. 1997).  Ultimately, "[i]n deciding a motion for a bill of particulars, '[t]he important question is whether the information sought is necessary, not whether it is helpful.'"  *United States v. Silberstein*, No. 02 Cr. 800 (SWK), 2003 WL 21488024, at *6 (S.D.N.Y. June 27, 2003) (quoting *United States v. Facciolo*, 753 F. Supp. 449, 451 (S.D.N.Y. 1990)).

Moreover, "a bill of particulars is not a general investigative tool, a discovery device, or a means to compel the government to disclose evidence or witnesses to be offered prior to trial." *United States v. Nunez*, No. 00 Cr. 121 (RCC), 2001 WL 91708, at *6 (S.D.N.Y. Feb. 1, 2001).

Hon. Lewis J. Liman                                                      Page 3
March 3, 2023

For example, a bill of particulars may not be used merely to acquire evidentiary detail, *see United States v. Robles*, No. 04 Cr. 1036 (GEL), 2005 WL 957338, at *1 (S.D.N.Y. Apr. 22, 2005), to discover the precise manner in which the charged crimes were committed, *see United States v. Andrews*, 381 F.2d 377, 377-78 (2d Cir. 1967) (per curiam), nor to discover the manner in which the Government will prove the charges, *see United States v. Leonelli*, 428 F. Supp. 880, 882 (S.D.N.Y. 1977).

### III.   Discussion

The defendant has more than sufficient notice of the nature of the charges in this case; the Government filed a detailed Complaint and produced substantial discovery, which, taken together, clearly set forth the fraud the defendant is accused of perpetrating.  *See United States v. Kogan*, 283 F. Supp. 3d 127, 133 (S.D.N.Y. 2017) ("Because the Complaint and discovery materials provide a clear explanation of the fraudulent schemes with which the Defendants are charged, ordering a bill of particulars is not necessary.").

Indeed, the Complaint explains the charged conduct in detail, specifically identifying the April 9, 2020, fraudulent application that the defendant submitted to the SBA to become a PPP lender, and explaining several specific misrepresentations and fraudulent documents included in that application.[1] *See* Complaint ¶¶ 24-31.  The Complaint also describes how the defendant used certain of the same fraudulent materials to seek, and ultimately receive, $100 million from the Company, on or about May 13, 2020.  *See* Complaint ¶ 32.  The Complaint further explains that the defendant entered into a PPP Liquidity Facility with a Federal Reserve Bank of San Francisco (the "FRB Liquidity Facility"), and from June 19, 2020, through July 21, 2021, received approximately $832 million from the Federal Reserve Bank. Complaint ¶ 34.

The Complaint is clear about how the fraud worked: "through the capital obtained from the agreement with the Company and the FRB Liquidity Facility, MBE issued a total of approximately $823 million in PPP loans . . . . From these loans MBE earned a total of approximately $71.3 million." Complaint ¶ 35.  The Complaint also sets forth detailed descriptions of the false representations and fictitious documents that the defendant provided to the SBA and the Company in connection with the fraud, as well as what makes those representations and documents fraudulent.  Complaint ¶¶ 24-26, 29-31, 32(a).  The ample detail in the Complaint clearly "'advise[s] the defendant of the specific acts of which he is accused,'" *see Berganza*, 2005 WL 372045, at *5 (quoting *Torres*, 901 F.2d at 234), and the Complaint alone makes a bill of particulars inappropriate here, *see Kogan*, 283 F. Supp. 3d at 133.

Even if the Complaint alone were not enough to provide sufficient notice to the defendant—and, as discussed above, it is—the Government has produced substantial discovery that documents and provides context for the charged conduct.  The defendant's argument that the

---

[1]  The Complaint also sets forth detailed allegations as to the other counts in the Superseding Indictment.  Because the defendant's motion for a bill of particulars is limited to particulars as to Count One, the discussion of the allegations in the Complaint herein is also limited to those relevant to the first count.

discovery is so voluminous that a bill of particulars is required is unavailing.  The volume of discovery only warrants a bill of particulars "if it obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial."  *United States v. Mahaffy*, 446 F. Supp. 2d 115, 120 (E.D.N.Y. 2006); *see also Bortnovsky*, 820 F.2d at 574-75.  That is hardly the case here.  Each production of discovery has included an index of the items produced, identified by category and Bates number range.  Indeed, a significant portion of the materials produced to date, including e-mail search warrant returns and productions made by MBE Capital itself (and thus, presumably accessible to the defendant even before the production of discovery), have been produced in a format that easily allows the materials to be loaded, reviewed, and searched.

On this record, there is no basis to conclude that the discovery in this case "obfuscates the allegedly unlawful conduct and unfairly inhibits the defendants' preparation for trial."  *Mahaffy*, 446 F. Supp. 2d at 120; *see also United States v. Skelos*, No. 15 Cr. 317 (KMW), 2015 WL 6159326, at *13 (S.D.N.Y. Oct. 20, 2015) (denying request for bill of particulars because "the Government here has done more than merely produce 'mountains of documents'; instead, the Government has provided the information in an organized and comprehensible fashion"); *United States v. Chalmers*, 410 F. Supp. 2d 278, 285 (S.D.N.Y. 2006) (no bill of particulars required where the Government produced discovery and provided "roadmaps"); *United States v. Mandell*, 710 F. Supp. 2d 368, 385 (S.D.N.Y. 2010) (denying request for particularization of alleged misrepresentations where the indictment was 34 pages long and Government had provided voluminous, organized discovery).

In seeking particulars as to Count One, the defendant essentially recasts his unsuccessful motion to dismiss as a request for particulars, claiming that the Complaint and the discovery are of limited usefulness—and that his motion for a bill of particulars is not untimely—because the Superseding Indictment "broadened the potential theories against him."  Def. Br. at 3-4.  It did no such thing.  The only change in the Superseding Indictment was a modest reformulation of the "to wit" clause in Count One. As the Government explained before it sought the Superseding Indictment and at oral argument on the defendant's motion to dismiss, the change was made out of an abundance of caution to reinforce that the Government's long-standing theory of the case was entirely consistent with *Cleveland*. *See* February 17, 2023, Transcript ("Tr.") at 9:24-10:21.  Indeed, the Complaint articulates in detail the various players and steps that have always been at the core of the criminal conduct underlying the Government's theory of Count One.  It discusses, in detail, not just the misrepresentations made to the SBA, but the steps the defendant then took to procure money from the Company and the Federal Reserve Bank of San Francisco, and how the defendant used those funds to issue PPP loans and secure more than $70 million in fees.

The defendant's claims, at this late date, that he was unaware that the fraud alleged in Count One involved defrauding the Company and the Federal Reserve of funds are untenable.  For example, in seeking particulars, the defendant claims that he "cannot know if the government is claiming that he also deceived the Company, the Federal Reserve, or any other person or entity." Def. Br. at 3-4.  But the Complaint specifically describes how the defendant submitted fraudulent audited financial statements to the Company in connection with the Company's due diligence on MBE, before giving MBE $100 million in capital.  Complaint ¶ 32(a).  Ultimately, the theory set

forth in the Complaint is the same theory alleged in Count One of the Indictment and in Count One of the Superseding Indictment.[2]

  For all of these reasons, the defendant should not be permitted to belatedly seek a bill of particulars in the lead up to trial. *See Nunez*, 2001 WL 91708, at *6 ("a bill of particulars is not a general investigative tool, a discovery device, or a means to compel the government to disclose evidence or witnesses to be offered prior to trial").

### IV.   <u>Conclusion</u>

  Accordingly, the defendant's motion for a bill of particulars should be denied.

       Respectfully submitted,

       DAMIAN WILLIAMS
       United States Attorney


     by: _____/s/_____
       Katherine Reilly
       Micah F. Fergenson
       Steven J. Kochevar
       Assistant United States Attorneys
       (212) 637-6521/2190/2262


cc: Defense Counsel (By ECF)

---

[2] As described above, the Government's theory as to Count One was clear from the Complaint. However, even if the defendant disputes that, the Government's theory was inarguably set forth in its initial opposition to the defendant's motion to dismiss, filed on December 23, 2022. In that opposition, the Government observed that "Martinez does not complain about any lack of specifics in the allegations set forth in Count One, nor has he filed a motion for a bill of particulars, the proper avenue for such a complaint." (Dkt. 41 at 12 n.3; *see also id.* ("[T]he Indictment, particularly when read in conjunction with the detailed Complaint and discovery materials, leaves no mystery as to the crimes and conduct charged."). Despite the Government's express reference to the defense's failure to seek a bill of particulars, the defendant did not make any request for a bill of particulars until he filed his supplemental reply brief on February 14, 2023.